*670 Siddoway, J.
¶1 In this consolidated appeal, Thomas Weatherwax and Jayme Rodgers both challenge their convictions of three counts of drive-by shooting and the sentences imposed for their convictions of three counts of first degree assault. Both challenge conditions of community custody. Mr. Weatherwax alone challenges one of his convictions for first degree assault, and Mr. Rodgers alone challenges legal financial obligations (LFOs) imposed by the court. Each has filed a statement of additional grounds (SAG).
¶2 In the published portion of this opinion, we construe RCW 9.94A.589(l)(b) to determine how it should be applied where one of the serious violent offences being sentenced is an anticipatory offense. We reach a different conclusion from that reached by Division One of our court in State v. Breaux, 167 Wn. App. 166, 273 P.3d 447 (2012). We also identify respects in which gang-related community custody conditions imposed by the trial court are unconstitutionally vague and must be stricken or narrowed on resentencing.
¶3 In the unpublished portion of this opinion, we hold that insufficient evidence supports the drive-by shooting convictions since the State failed to demonstrate shots were fired from, or from the immediate area of, Mr. Rodger’s car. And the State concedes that mandatory minimum sentences for the assault convictions were imposed in error, a concession we accept. We also hold that motor vehicle related community custody conditions must be stricken on resentencing.
¶4 All of the remaining convictions are supported by substantial evidence, and neither SAG identifies any trial court error or abuse of discretion. We reverse the drive-by shooting convictions and the mandatory minimum sen *671 tences, and remand for resentencing consistent with this opinion.
FACTS AND PROCEDURAL BACKGROUND
¶5 Late one evening in September 2013, Leroy Bercier was at a convenience store in the Hillyard neighborhood of Spokane, when he was accosted by Jayme Lee Rodgers, a member of the Norteño Red Boyz gang, which claims Hillyard as its territory Mr. Bercier’s shoes, belt, and shirt were all blue, a color favored by the Sureños, the rival gang of the Norteño Red Boyz. Mr. Rodgers confronted Mr. Bercier about his blue clothing and called him a “scrap”—a derogatory term for a Sureños gang member. Mr. Bercier’s cousin broke up the confrontation, and one of the store’s owners, Suijit Singh, asked Mr. Rodgers to leave.
¶6 Mr. Rodgers left the store and joined his passenger and fellow Norteño Red Boyz member, Thomas Weather-wax, in Mr. Rodgers’s car. They remained in the convenience store parking lot for a time, unsuccessfully calling to Mr. Bercier to come out and fight. Eventually, Mr. Rodgers and Mr. Weatherwax drove away.
¶7 Shortly thereafter, Louie Stromberg and Amanda Smith arrived at and entered the convenience store. Mr. Bercier, who denied being a member of the Sureños gang but had family members who were, told Mr. Stromberg he was worried about two people outside who were going to “jump him.” Report of Proceedings (RP) at 229. According to Mr. Stromberg, Mr. Bercier appeared very frightened; Mr. Stromberg looked outside for him, but did not see anyone. He told Mr. Bercier he would watch out and make sure nobody hurt him.
¶8 Mr. Bercier then left the store in the direction of two semitrucks parked in a large dirt lot next to the convenience store. Moments later, he came running back, passing Mr. Stromberg, who had completed his purchase and returned to his car.
*672 ¶9 Mr. Bercier’s race back to the store caused Mr. Stromberg to step out of his car, after which he saw two figures come around the semitrucks, which were about 30 yards away. Without coming any closer, the two began shooting in the direction of Mr. Stromberg’s car. They fired 6 to 10 shots, 3 of which hit Mr. Stromberg’s car. Like Mr. Stromberg, Ms. Smith was standing outside the car when the shots were fired. Both Mr. Stromberg and Ms. Smith ran into the store for cover. Mr. Stromberg later testified there were two shooters; he had seen distinct muzzle flashes from two locations.
¶10 Police officers located Mr. Rodgers’s car that night, parked on the street within a few minutes’ driving distance from the convenience store. From running the car’s license plate, they determined it had ties to the Norteño Red Boyz gang. The car was parked a block away from the home of a friend of Mr. Weatherwax. Both Mr. Weatherwax and Mr. Rodgers were in the home and were detained by police within several hours of the car being identified.
¶11 Officers executed warrants to search the car and the home, and recovered two firearms: a .380 caliber semiautomatic Browning pistol, found in the car’s trunk, and a holstered Makarov semiautomatic 9 mm pistol, which was found in a dryer inside the home. Forensic testing tied Mr. Weatherwax to the Makarov’s holster and tied a bullet from Mr. Stromberg’s car to the Browning pistol.
¶ 12 Mr. Rodgers and Mr. Weatherwax were each charged with three counts of first degree assault, with Mr. Bercier, Mr. Stromberg, and Ms. Smith as the victims; one count of conspiracy to commit assault against Mr. Bercier; and three counts of drive-by shooting, again with Mr. Bercier, Mr. Stromberg, and Ms. Smith as the victims. Both informa-tions alleged firearm enhancements for the assault and conspiracy to commit assault charges, and a gang aggra-vator in connection with the crimes committed against Mr. Bercier. Mr. Weatherwax was charged with one count of felon in possession of a firearm.
*673 ¶13 The men were jointly tried, and the jury found both guilty of all charges. Mr. Weatherwax, who had a prior criminal history, was sentenced to 810 months of confinement. Mr. Rodgers, who had no criminal history, was sentenced to 546 months of confinement. The court imposed conditions of community custody on each defendant. Finally, the court imposed mandatory LFOs in the amount of $800 against both Mr. Weatherwax and Mr. Rodgers without objection from either defendant.
¶14 Both defendants appeal.
ANALYSIS
¶15 Mr. Weatherwax and Mr. Rodgers raise similar challenges to (1) the proper application of RCW 9.94A.589, (2) community custody conditions imposed, (3) the sufficiency of the evidence to support the drive-by shooting convictions, and (4) mandatory minimum sentences imposed for assault. Mr. Weatherwax alone challenges the sufficiency of evidence to convict him of first degree assault of Mr. Bercier. Mr. Rogers alone challenges the court’s imposition of LFOs.
¶16 We address the issues in the order stated.

Sentencing errors: RCW 9.94A.589 and gang-related community custody conditions

A. RCW 9.94A.589 and the rule of lenity
¶17 Mr. Weatherwax and Mr. Rodgers argue the trial court improperly calculated their sentences under RCW 9.94A.589 when it applied an offender score of zero to their convictions for conspiracy to commit first degree assault, rather than to their convictions for first degree assault. They argue that RCW 9.94A.589 is ambiguous as to how the offender score is calculated when an offender’s current serious violent offenses include an anticipatory offense. They contend the rule of lenity requires us to resolve that *674 ambiguity in favor of a calculation method that results in a shorter, rather than longer, total period of incarceration. Their argument is supported by Division One’s decision in Breaux, but we do not believe RCW 9.94A.589 is ambiguous. Plainly read, it supports the trial court’s calculation of the sentence.
¶18 Under RCW 9.94A.589(1), sentences for offenses that are serious violent offenses run consecutively, while sentences for offenses that are not serious violent offenses run concurrently. The statute ameliorates, somewhat, the impact of consecutively sentencing serious violent offenses by providing that the standard range for only one of the serious violent offenses is determined using an offender score that includes all of the offender’s prior convictions and current offenses that are not serious violent offenses. The standard range for other serious violent offenses is determined using an offender score of zero. The statute explicitly provides that the offense that is sentenced using the full offender score is the offense with the “highest seriousness level under RCW 9.94A.515.” RCW 9.94A-.589(l)(b). The result—rational and presumably intended —is that the full offender score is used where it will maximize the offender’s total sentence.
¶19 Here, as in Breaux, one of the serious violent offenses being sentenced is an anticipatory offense—in this case, it is the charge of conspiracy to commit first degree assault; in Breaux, the charge was attempted first degree rape. 167 Wn. App. at 168. RCW 9.94A.515, which identifies crimes included within each seriousness level, does not include anticipatory crimes within any seriousness level. A different statute, RCW 9.94A.595, provides that for persons convicted of the anticipatory offenses of criminal attempt, solicitation, or conspiracy under chapter 9A.28 RCW,
the presumptive sentence is determined by locating the sentencing grid sentence range defined by the appropriate offender score and the seriousness level of the crime, and multiplying the range by 75 percent.
*675 ¶20 Mr. Weatherwax and Mr. Rodgers argue that if we treat the anticipatory crime of conspiracy to commit first degree assault as if it has a seriousness level of 12 under RCW 9.94A.515—the seriousness level for first degree assault—then neither it nor the first degree assault count will have the “highest” seriousness level under that statute because their seriousness levels will be the same. Since the standard sentence range for conspiracy is reduced by multiplying it by 75 percent, however, the offender derives a substantial benefit if the offense sentenced using the full offender score is the anticipatory offense. Mr. Weatherwax and Mr. Rodgers argue the rule of lenity requires us to construe the statute to give them that benefit. If we do, then we will have created the only situation in which RCW 9.94A.589(l)(b) does not require the full offender score to be used where it will maximize the sentence. No reason is offered as to why the legislature would have intended such a result.
¶21 A court’s fundamental objective in interpreting a statute is to ascertain and carry out the legislature’s intent. Arborwood Idaho, LLC v. City of Kennewick, 151 Wn.2d 359, 367, 89 P.3d 217 (2004). If the statute’s meaning is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent. Dep’t of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). We do not read the plain language of RCW 9.94A.589(1)(b) as supporting the construction urged by Mr. Weatherwax and Mr. Rodgers.
¶22 The statute plainly states the offense that is to be sentenced using the full offender score is “the offense with the highest seriousness level under RCW 9.94A.515.” Conspiracy to commit first degree assault has no seriousness level under RCW 9.94A.515. A different statute treats it as having a seriousness level and then reduces the resulting standard range. But RCW 9.94A.589(l)(b) does not say that the offense to be sentenced using the full offender score is “the offense with the highest seriousness level under RCW *676 9.94A.515 or the highest deemed seriousness level when applying RCW 9.94A.595.”
¶23 We do not read into statutes words the legislature is alleged to have inadvertently omitted unless doing so is imperatively required to make the statute rational. State v. Taylor, 97 Wn.2d 724, 728-29, 649 P.2d 633 (1982). And where a party argues that there has been a legislative omission but we can postulate why the legislature might have intended the literal meaning of the statute, our Supreme Court has “uniformly concluded judicial intervention was unwarranted.” Id. at 729. We can postulate why the legislature might intend a literal meaning in this case: limiting the choice of “the offense with the highest seriousness level under RCW 9.94A.515” to those that actually have a seriousness level under that statute ensures that the full offender score is used where it will maximize the sentence. It avoids an anomalous exception for anticipatory offenses.
¶24 For these reasons, we respectfully disagree with the result in Breaux and affirm the trial court’s application of RCW 9.94A.589(l)(b).
B. Gang-related conditions
¶25 Mr. Weatherwax and Mr. Rodgers both challenge the following gang-related condition of community custody that appears in both of their felony judgment and sentences:
That the defendant shall not wear clothing, insignia, medallions, etc., which are indicative of gang lifestyle. Furthermore, that the defendant shall not obtain any new or additional tattoos indicative of gang lifestyle.
Clerk’s Papers (CP) at 338, 743. They contend the condition is unconstitutionally vague and impinges on their rights under the First Amendment to the United States Constitution. Mr. Weatherwax, alone, argues the condition must be stricken for the further reason that it is not crime related.
*677 ¶26 Mr. Rodgers, alone, challenges a second gang-related condition: “That the defendant not be allowed to have any association or contact with known felons or gang members or their associates.” CP at 743. The court (or the State on presentment) struck out preprinted language following that condition, which states, “A specific list will be provided to the defendant by [the Department of Corrections] and updated as required by the assigned Community Corrections Officer.” Id.
¶27 Because we are remanding for resentencing, we will forgo discussion of the types of challenges to supervision conditions that can be raised for the first time on appeal and the requirement of ripeness. We proceed directly to the fact that in their current form, these gang-related conditions are unconstitutionally vague and must be stricken, clarified, or narrowed at resentencing.
¶28 As an initial matter, we reject Mr. Rodgers’s contention that gang-related conditions are not crime-related. The record supports a determination by the sentencing court that future gang-related conduct by Mr. Rodgers would have a direct relation to the circumstances of the crimes of which he remains convicted.[1]
 ¶29 “[T]he due process vagueness doctrine under the Fourteenth Amendment [to the United State Constitution] and article I, section 3 of the state constitution requires that citizens have fair warning of proscribed conduct.” State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). The doctrine applies to protect against “arbitrary enforcement” of laws and “assure! ] that ordinary people can understand what is and is not allowed.” State v. Sanchez Valencia, 169 Wn.2d 782, 791, 239 P.3d 1059 (2010) (citing Bahl, 164 Wn.2d at 752). When a condition of community placement concerns material protected under the First Amendment, “a vague standard can cause a chilling *678 effect on the exercise of sensitive First Amendment freedoms. For this reason, courts have held that a stricter standard of definiteness applies if material protected by the First Amendment falls within the prohibition.” Bahl, 164 Wn.2d at 753 (citations omitted).
¶30 Clothing, insignias, medallions, etc., and tattoos. In State v. Villano, 166 Wn. App. 142, 272 P.3d 255 (2012), this court concluded that a condition imposed by a juvenile court that forbade the defendant from possessing “gang paraphernalia” was unconstitutionally vague. The court noted that “[i]n the common experience of this court, popular clothing items or specific colored items are frequently described as gang attire. If the trial court intended to prohibit the wearing of bandanas or particular colored shoes, it needed to provide clear notice.” Id. at 144.
¶31 In United States v. Soltero, 510 F.3d 858, 865 (9th Cir. 2007), the Ninth Circuit Court of Appeals examined the constitutionality of a condition forbidding a defendant to “wear, display, use or possess any insignia, emblem, button, badge, cap, hat, scarf, bandana, jewelry, paraphernalia, or any article of clothing which may connote affiliation with, or membership in[,] the Delhi gang.” There, the court concluded that the condition was “not impermissibly vague because [it] specifically reference [d] the ‘Delhi gang,’ and the district court [was] entitled to presume that [the defendant]—who [had] admitted to being a member of this gang—[was] familiar with the Delhi gang’s members, its places of gathering, and its paraphernalia.” Id. at 866.
¶32 Where no gang was identified, the Second Circuit Court of Appeals concluded that a condition of supervised release prohibiting the defendant from “ ‘wearing of colors, insignia, or obtaining tattoos or burn marks (including branding and scars) relative to [criminal street] gangs’ ” was unconstitutionally vague. United States v. Green, 618 F.3d 120, 124 (2d Cir. 2010) (alteration in original). There, the court noted that “[t]he range of possible gang colors is *679 vast and indeterminate,” and “[eliminating such a broad swath of clothing colors would make [the offender’s] daily choice of dress fraught with potential illegality.” Id.
¶33 The language “indicative of gang lifestyle” is unconstitutionally vague. It does not limit the prohibited clothing or tattoos to those that are associated with or signify gang membership, nor does it identify the gang or gangs of concern. Some may take the position that any tattoo is “indicative of gang lifestyle.”[2] On remand, any gang-related conditions prohibiting clothing, insignias, medallions, or tattoos must provide clearer notice of what is prohibited.
¶34 Association with felons and gang members. In Soltero, the court considered the constitutionality of a condition that read:
“The defendant shall not associate with any known member of any criminal street gang or disruptive group as directed by the Probation Officer, specifically, any known member of the Delhi street gang.”
510 F.3d at 865. It held that the portion of the condition that prohibited the defendant from associating “with any known member of any criminal street gang . . . specifically, any known member of the Delhi street gang” was constitutional. Id. The identification of the “Delhi street gang” was key in insulating the condition from a vagueness challenge.
¶35 The condition was held to be impermissibly vague in prohibiting the defendant from associating with “any known member of any . . . disruptive group.” Id. at 867 (alteration in original). The court concluded that “disruptive *680 group” could reasonably be interpreted to include groups the government cannot reasonably restrict a defendant from associating with, such as political protesters, labor unions, or sports fans.
¶36 In United States v. Johnson, 626 F.3d 1085, 1090 (9th Cir. 2010), the Ninth Circuit struck down the following condition of supervised release as vague:
“The defendant may not associate with anyone known to him to be a Rollin’ 30’s gang member or persons associated with the Rollin’ 30’s gang, with the exception of his family members.”
The court held that “[t]here is a considerable difference . .. between forbidding a defendant from associating with gang members and precluding him from associating with persons who associate with gang members.” Id. at 1091. Such a condition
sweeps too broadly because it encompasses not only those who are involved in the gang’s criminal activities, but also those who may have only a social connection to an individual gang member. The provision could forbid [the defendant] from associating with, for example, the ... employer, minister or friend of a Rollin’ 30’s gang member. It could even preclude [the defendant] from meeting with his probation officer.
Id. The court concluded that the condition was “impermis-sibly vague and entails a deprivation of liberty that is greater than necessary to achieve the goal of preventing [the defendant] from reverting to his previous criminal lifestyle.” Id.
¶37 The challenged condition here—that “the defendant not be allowed to have any association or contact with known felons or gang members or their associates”—suffers from the same infirmity as the condition stricken in Johnson, unless it is clear that the word “associates” is intended *681 to have the meaning provided by RCW 9.94A.030(13).[3] CP at 337, 743 (emphasis added).
¶38 To summarize, gang-related conditions of community custody can be imposed as crime-related, given the circumstances of the crimes. But they must be limited to behaviors that signify gang membership, or association in or with an identified gang or gangs. Limits on association must be confined to felons, gang members, or gang associates in the sense defined by RCW 9.94A.030(13), or to other specifically described persons having a direct relation to the circumstances of the crimes.
¶39 For reasons discussed hereafter, we reverse the drive-by shooting convictions and the mandatory minimum sentences, and remand for resentencing.
¶40 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
Korsmo, J., concurs.

 The jury even returned a special verdict finding that the crimes against Mr. Bercier were gang related, although the court declined to impose an exceptional sentence based on the gang aggravator.

 The State has called our attention to California decisions approving probation conditions that imposed blanket restrictions on tattoos, but those decisions dealt exclusively with juveniles. Under California law, “[e]very person who tattoos or offers to tattoo a person under the age of 18 years is guilty of a misdemeanor.” Cal. Penal Code § 653. “[T]he probation condition prohibiting [a juvenile defendant] from acquiring additional tattoos and body markings is analogous to the probation condition requiring him to obey all laws.” In re Antonio C., 83 Cal. App. 4th 1029, 1035, 100 Cal. Rptr. 2d 218 (2000). Mr. Weatherwax and Mr. Rodgers were both in their 20s at the time they were sentenced.

 “ ‘Criminal street gang associate or member’ means any person who actively participates in any criminal street gang and who intentionally promotes, farthers, or assists in any criminal act by the criminal street gang.” RCW 9.94A.030(13).