This opinion was filed for record

at 8:00 am on April 6, 2017

for SUSAN L. CARLSON
SUPREME COURT CLERK



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE APR 0 6 2017

Fairhurst, C.J.
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 93192-5 |
| Respondent, | EN BANC |
| v. | |
| THOMAS LEE WEATHERWAX, | Filed APR 0 6 2017 |
| Petitioner. | |
| STATE OF WASHINGTON, | |
| Respondent, | |
| v. | |
| JAYME L. RODGERS, | |
| Petitioner. | |

GORDON McCLOUD, J.—The general rule in Washington is that sentences for multiple current offenses will run concurrently. RCW 9.94A.589(1)(a). But the portion of the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, at issue here—RCW 9.94A.589(1)(b)—provides an exception. It states that sentences for

"serious violent offenses arising from separate and distinct criminal conduct" must run consecutively. It then provides a special rule for calculating the sentence for each such serious violent offense: the sentence is calculated based on "the offense with the highest seriousness level under RCW 9.94A.515." RCW 9.94A.589(1)(b).

That statute does not, however, specify how the sentencing court should determine the seriousness level of a "serious violent offense[]" subject to RCW 9.94A.589(1)(b) consecutive sentencing when that offense is an anticipatory crime—because anticipatory crimes are not explicitly listed in RCW 9.94A.515's seriousness level chart. Nor does RCW 9.94A.589(1)(b) specify how the sentencing court should choose the "serious violent offense[]" on which to base the sentence when there are two or more such offenses with the same seriousness level—but they produce different standard ranges.

This lack of statutory guidance has produced a conflict in the Court of Appeals. In the consolidated cases before us now, petitioners were each charged with four serious violent offenses—one count of conspiracy to commit assault (an anticipatory crime) and three substantive crimes of assault. *State v. Weatherwax*, 193 Wn. App. 667, 376 P.3d 1150, *review granted*, 186 Wn.2d 1009, 380 P.3d 490 (2016). A divided panel of Division Three held that the anticipatory crime did not have a seriousness level at all, and hence that anticipatory crime could not form the basis for consecutive sentencing calculations under RCW 9.94A.589(1)(b). Instead,

2

it directed the sentencing court to calculate the sentence using the seriousness level and standard range for one of petitioners' substantive crimes—an approach that resulted in longer sentences. The majority's approach in *Weatherwax* conflicts with that of Division One. In *State v. Breaux*, Division One held that RCW 9.94A.589(1)(b) was ambiguous in cases where multiple serious violent offenses had the same seriousness level but produced different length sentences; it therefore held that the rule of lenity required courts facing that situation to start their sentencing calculations using the serious violent offense that yields the shorter overall sentence. 167 Wn. App. 166, 179, 273 P.3d 447 (2012).

We accepted review to resolve this conflict. We hold that for purposes of RCW 9.94A.589(1)(b), anticipatory offenses carry the same seriousness level as their completed offenses. We further hold that when an anticipatory offense and a completed offense carrying the same seriousness level might both form the basis for calculating consecutive sentences under RCW 9.94A.589(1)(b), the sentencing court must start its calculations with the offense that produces the lower overall sentence. We therefore reverse and remand for resentencing using the approach taken by the Court of Appeals in *Breaux*.

## FACTS

On September 24, 2013, Thomas Weatherwax and Jayme Rodgers verbally threatened an alleged rival gang member, Leroy Bercier, inside a convenience store

in Spokane. A little while later, in the parking lot of that store, Weatherwax and Rodgers fired a series of shots at Bercier and two bystanders, Louie Stromberg and Amanda Smith. The State charged each defendant with eight crimes—three counts of drive-by shooting (RCW 9A.36.045(1)), one count of first degree unlawful possession of a firearm (RCW 9.41.040(1)), three counts of first degree assault (RCW 9A.36.011(1)), and one count of conspiracy to commit first degree assault (RCW 9A.36.011(1), 9A.28.040(1))—for these shootings. Clerk's Papers (CP) at 51-53; 373-74. The State dropped the unlawful possession of a firearm charge against Rodgers prior to trial. CP at 379-81. The jury convicted Weatherwax and Rodgers on all remaining counts in a joint trial. The jury also returned "yes" special verdicts to four firearm sentence enhancements (RCW 9.94A.825, 9.94A.533) and three gang aggravators for each young man. CP at 277-83, 587-93.

The trial court therefore had several serious violent offenses and several nonserious violent offenses before it at sentencing. RCW 9.94A.589(1)(a) governed the nonserious violent offenses, and the calculations on those are not before this court. As for the other, serious violent offenses, RCW 9.94A.589(1)(b) provides that serious violent offenses that arise from "separate and distinct criminal conduct" must be sentenced consecutively, using "the offense with the highest seriousness level under RCW 9.94A.515" as the predicate offense. First degree assault is a "serious violent offense," as is conspiracy to commit first degree assault. RCW

4

9.94A.030(46)(a)(v), (ix). Thus, there were four serious violent offenses potentially subject to RCW 9.94A.589(1)(b)'s consecutive sentencing rules at each defendant's sentencing: count I (first degree assault of Bercier), count II (conspiracy to commit first degree assault), count III (first degree assault of Stromberg), and count IV (first degree assault of Smith).

Applying RCW 9.94A.589(1)(b), the trial court used count I (first degree assault of Bercier) as the starting point—as the "offense with the highest seriousness level"—for calculating the serious violent offense portion of petitioners' sentences. That sentence plus three firearm enhancements (totaling 360 months in Weatherwax's case due to doubling under our sentencing rules and 180 months for Rodgers) accounted for the length of petitioners' sentences (because the other sentences ran concurrently). In total, Weatherwax, who was 25 years old at the time of the crime, was sentenced to 810 months (67.5 years) in prison. Rodgers, who was 22, was sentenced to 546 months (45.5 years).

Both young men appealed to Division Three of the Court of Appeals. Among other things, they challenged the trial court's calculation of their sentences on the serious violent offenses—specifically, its use of count I (assault) as the starting point, rather than count II (conspiracy, an anticipatory offense).

The State conceded error on this point. Both petitioners and the State relied on the *Breaux* decision from Division One. *Breaux* held that RCW 9.94A.589(1)(b)

was ambiguous about which offense should be used as the basis for the consecutive sentencing calculation when a defendant's serious violent offenses included both completed and anticipatory offenses. 167 Wn. App. at 177-78. It therefore concluded that the rule of lenity required the sentencing court to use the anticipatory crime as the starting point for calculations because that would yield the shorter of two possible sentences in that case. *Id.* at 178.

But a divided panel of Division Three disagreed. It rejected the State's concession and ruled, instead, that RCW 9.94A.589(1)(b) was not ambiguous and that anticipatory offenses do not have a seriousness level at all under RCW 9.94A.515. *Weatherwax*, 193 Wn. App. at 674. The majority reasoned that the legislature intended RCW 9.94A.589(1)(b) to "maximize the offender's total sentence," and stated that the *Breaux* approach would yield "a substantial benefit" to the person being sentenced by shortening his or her sentence. *Id.* at 674-75. By holding that the statute clearly precluded predicating serious violent offense sentences on anticipatory crimes, the majority concluded that its rule "avoids an anomalous exception for anticipatory offenses." *Id.* at 676. It affirmed petitioners' sentences on this point, over dissent. *Id.* at 676, 681 (Pennell, J., dissenting in part).

We granted review and now reverse and remand for resentencing.

ANALYSIS

I.    For Purposes of RCW 9.94A.589(1)(b), the Seriousness Level of an Anticipatory Offense Is the Same as the Seriousness Level of the Target Crime

The legislature clearly intended to include certain anticipatory offenses—conspiracy, attempt, and solicitation to commit a serious violent offense—in the definition of "serious violent offenses" to which RCW 9.94A.589(1)(b)'s special consecutive sentencing rules apply. RCW 9.94A.030(46)(ix). But the legislature did not clearly specify what seriousness level such anticipatory crimes have.

Different divisions of our Court of Appeals have dealt with that problem differently. In *Weatherwax*, Division Three held, "Conspiracy to commit first degree assault has no seriousness level under RCW 9.94A.515." 193 Wn. App. at 675. In *Breaux*, Division One stated, "We . . . need not decide whether the seriousness levels assigned to completed offenses apply to anticipatory offenses for purposes of RCW 9.94A.589(1)(b)." 167 Wn. App. at 177. Previously, however, in *State v. Mendoza*, Division One stated in dicta that "the seriousness level of anticipatory offenses charged under RCW 9A.28 is the seriousness level of the 'completed crime.'" 63 Wn. App. 373, 377, 819 P.2d 387 (1991). Petitioners and the State both urge us to hold that anticipatory offenses have the same seriousness level for purposes of RCW 9.94A.589(1)(b) as their completed offense counterparts.

7

This is a question of first impression for our court. We have noted it only in dicta. *See State v. Weber*, 159 Wn.2d 252, 268 n.7, 149 P.3d 646 (2006). We now agree with the parties that for purposes of RCW 9.94A.589(1)(b), the seriousness level of anticipatory offenses is the same as the seriousness level of the completed target crime.

> *A. RCW 9.94A.589(1)(b) Assumes That One Offense Will Have a Higher Seriousness Level Than the Others—And That Was Not True in This Case*

RCW 9.94A.589(1)(b), the SRA's exception to the general rule of concurrent sentencing, provides:

> Whenever a person is convicted of *two or more serious violent offenses arising from separate and distinct criminal conduct*, the standard sentence range for *the offense with the highest seriousness level* under RCW 9.94A.515 shall be determined using the offender's prior convictions and other current convictions that are not serious violent offenses in the offender score and the standard sentence range for other serious violent offenses shall be determined by using an offender score of zero. The standard sentence range for any offenses that are not serious violent offenses shall be determined according to (a) of this subsection. All sentences imposed under this subsection (1)(b) shall be served consecutively to each other and concurrently with sentences imposed under (a) of this subsection.

(Emphasis added.)

Under this statute, to determine the length of consecutive sentences, the sentencing court must first identify which of the "serious violent offenses arising from separate and distinct criminal conduct" is "the offense with *the highest*

*seriousness level* under RCW 9.94A.515." *Id.* (emphasis added). The statute thus assumes that there is just one such offense.

That, however, was not the case here. Four of Weatherwax's and Rodgers's convictions are "serious violent offenses" with arguably equally high seriousness levels potentially subject to RCW 9.94A.589(1)(b)'s calculations: first degree assault of Bercier (count I), first degree assault of Stromberg (count III), first degree assault of Smith (count IV), and the anticipatory offense—conspiracy to commit first degree assault (count II). RCW 9.94A.030(46)(v), (ix). RCW 9.94A.589(1)(b) does not explicitly tell the sentencing court what to do in this situation. We therefore need to determine how to apply the statute in this context.

> *B. RCW 9.94A.589(1)(b)'s Plain Language and Underlying Legislative Intent Indicate That Anticipatory Offenses Have the Same Seriousness Level as Their Target Crimes; To Hold Otherwise Would Yield Absurd Results*

We review this statutory interpretation issue de novo. *State v. Conover*, 183 Wn.2d 706, 711, 355 P.3d 1093 (2015). Our "'fundamental objective . . . is to ascertain and carry out the legislature's intent.'" *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010) (quoting *Arborwood Idaho, LLC v. City of Kennewick*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004)). In interpreting statutes, "we presume the legislature did not intend absurd results" and thus avoid

them where possible. *State v. Eaton*, 168 Wn.2d 476, 480, 229 P.3d 704 (2010) (citing *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)).

The context of RCW 9.94A.589(1)(b) and its related provisions is important to our analysis. We discern a statute's meaning "from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009) (citing *State v. Jacobs*, 154 Wn.2d 596, 600-01, 115 P.3d 281 (2005)). "Related statutory provisions are interpreted in relation to each other and all provisions harmonized." *C.J.C. v. Corp. of Catholic Bishop of Yakima*, 138 Wn.2d 699, 708, 985 P.2d 262 (1999) (citing *State v. S.P.*, 110 Wn.2d 886, 890, 756 P.2d 1315 (1988)). Many of the SRA's provisions cross-reference other SRA provisions. We have recognized that such cross-references "avoid encumbering the statute books by unnecessary repetition, and . . . are recognized in this state as an approved method of legislation." *Knowles v. Holly*, 82 Wn.2d 694, 700, 513 P.2d 18 (1973) (citing *Roehl v. Pub. Util. Dist. No. 1 of Chelan County*, 43 Wn.2d 214, 226, 261 P.2d 92 (1953)). We consider the referencing statute to incorporate the text of the referenced provision completely, as if the two were one statute. *Id.* at 700-01.

Applying the rules, we see that RCW 9.94A.589(1)(b) directs the sentencing court to calculate the offender score based on "the offender's prior convictions and other current convictions that are not serious violent offenses" and to use that

offender score to determine the standard sentence range for "the offense with the highest seriousness level" it previously identified. "Seriousness levels" are listed in cross-referenced RCW 9.94A.515. But the chart at RCW 9.94A.515 ranks only completed offenses—it does not explicitly include anticipatory offenses such as conspiracy. Thus, while that chart assigns a seriousness level of XII to first degree assault, it does not specify the seriousness level of conspiracy to commit first degree assault.

Another SRA statute, however, arguably does. RCW 9.94A.595 provides that the presumptive sentence for anticipatory crimes charged under chapter 9A.28 RCW "is determined by locating the sentencing grid sentence range defined by the appropriate offender score and *the seriousness level of the crime*, and multiplying the range by 75 percent." (Emphasis added.) For purposes of this statute, the words "the crime" have been interpreted to mean the target crime. *See, e.g., State v. Chavez*, 163 Wn.2d 262, 271 n.8, 180 P.3d 1250 (2008) (calculating standard range for attempted first degree murder using seriousness level for completed first degree murder).

To sum up, then, the SRA requires consecutive sentencing of serious violent offenses based on the serious violent offense "with the highest seriousness level" (including the anticipatory versions of these crimes). The statute that ranks crimes by seriousness level, however, does not explicitly list anticipatory crimes. But RCW

11

9.94A.595 seems to fill that gap by explaining where in the RCW 9.94A.515's chart anticipatory crimes should fit—they fit with their target completed crimes.

Both petitioners and the State rely on RCW 9.94A.595 to argue that anticipatory and completed offenses should have the same seriousness level. From this, they conclude that the legislature intended to make the seriousness levels the same for both types of crimes.

They also note that if anticipatory crimes were deemed to have no seriousness level, defendants whose serious violent offenses included *only* anticipatory offenses could not be sentenced in accordance with RCW 9.94A.589(1)(b) at all. Suppl. Br. of Pet'r Jayme L. Rodgers at 5; Suppl. Br. of Resp't at 8. The State adds that in cases where a defendant's serious violent offenses include *both* anticipatory offenses whose target crimes have a high seriousness level (e.g., attempted first degree murder, with a target crime seriousness level of XV) *and* completed crimes with lower seriousness levels (e.g., first degree kidnapping, seriousness level X), a finding that the anticipatory offense has no seriousness level would produce a "windfall" to the defendant because his or her sentence would then be based on the lower range for kidnapping instead of the higher range for attempted murder. Suppl. Br. of Resp't at 8-9.

In fact, in its supplemental brief, the State includes tables calculating specific examples of sentences that would be *higher* using the anticipatory offense, and not

12

the completed crime, as the predicate. *See id.* at 5-7. The *Weatherwax* court did not have the benefit of these tables prepared by the State, which demonstrate the anomalous results that can occur if anticipatory crimes are excluded from consideration for purposes of RCW 9.94A.589(1)(b). These tables make clear that the rule adopted by the Court of Appeals in *Weatherwax* does not maximize sentences in every case.

That leaves us with four reasons for adopting the interpretations advanced by the parties. First, as discussed above, RCW 9.94A.595 directs judges to calculate regular sentences for inchoate crimes using the seriousness level for "the crime"— that is, the target crime. In other words, RCW 9.94A.595 explains how to use the seriousness level table contained in RCW 9.94A.515 to calculate sentences for anticipatory crimes—even though those crimes are not specifically listed in that table. It is therefore logical to infer that the legislature intended the table in RCW 9.94A.515 to be used the same way when it cross-referenced that statute in RCW 9.94A.589(1)(b).

Second, although it seems plain from the language of the statute that the legislature intended to increase sentences overall where multiple serious violent offenses were committed at once, compared to the concurrent sentences generally

imposed under the guidelines,[1] it does not necessarily follow that the legislature intended to "maximize" them. Indeed, as the *Weatherwax* court recognized, RCW 9.94A.589(1)(b) "ameliorates, somewhat, the impact of consecutively sentencing serious violent offenses" by assigning an offender score of zero to all of these offenses but one, even when these scores might otherwise have been much higher and might have produced a much longer overall sentence. 193 Wn. App. at 674.

Third, the legislature has arguably acquiesced in *Breaux*'s interpretation. As the dissent stated in the court below, the legislature amended RCW 9.94A.589(1)(b) in 2015—three years after *Breaux* was decided—but left this part of the statutory language unchanged. *Id.* at 682. And as the State points out, we encountered a similar situation in *State v. Kier*, in which a statutory amendment passed by the legislature three years after our decision interpreting that statute also left the relevant statutory provision unaltered. 164 Wn.2d 798, 805, 194 P.3d 212 (2008); Suppl. Br. of Resp't at 11. From this, we concluded, "We are confident that our analysis in [the prior case] accurately reflects the legislature's intent." *Kier*, 164 Wn.2d at 805.

---

[1] This seems to be the intent, though commentators have noted that even under ordinary circumstances (i.e., not cases involving the added wrinkle of an anticipatory offense), RCW 9.94A.589(1)(b) doesn't *always* result in a higher sentence than would result under ordinary application of the guidelines. *See* 13B SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 3511, at 302 n.9 (2d ed. 1998).

Finally, our holding today avoids absurd results. The legislature expressly designated certain anticipatory offenses as serious violent offenses. RCW 9.94A.030(46)(ix). It must therefore have intended to include them when calculating sentences for serious violent offenses under RCW 9.94A.589(1)(b), not to exclude them entirely. And choosing this reading is consistent with the purpose of RCW 9.94A.589(1)(b)—to increase sentences when multiple serious violent offenses have been committed—because it allows sentencing courts to base sentences on anticipatory crimes when they are more serious than a defendant's other serious violent offenses, or when a defendant's serious violent offenses consist of *only* anticipatory crimes.

Accordingly, we hold that for purposes of applying RCW 9.94A.589(1)(b), anticipatory offenses have the same seriousness level as their target crimes.

II.   RCW 9.94A.589(1)(b) Does Not Specify Which Serious Violent Offense To Start With When Sentencing on Two or More Such Crimes; That Constitutes an Ambiguity That Must Be Resolved Using the Rule of Lenity

This interpretation does, however, leave the question of how the trial court should calculate serious violent offense sentences when a defendant is convicted of two or more such offenses that have the same "highest seriousness level," but which could produce different possible total sentences. We hold that in such cases, the rule

15

of lenity requires the trial court to base its calculation on the crime that results in the shorter of two possible sentences.

### A. *RCW 9.94A.589(1)(b) Does Not Say Which of Two or More Identical "Highest Seriousness Levels" Should Be Used To Calculate the Sentence, and It Sometimes Makes a Difference*

RCW 9.94A.589(1)(b) instructs the sentencing court to determine which of the defendant's serious violent offenses is "the offense with the highest seriousness level," and to use that offense as the basis for calculating his or her serious violent offense sentences. Where one offense clearly has the highest seriousness level, this directive is clear. Even where two offenses have the same seriousness level, a problem may not arise because, frequently, two offenses with the same seriousness level will carry the same standard range.

But that is not always the case. Two offenses can have the same seriousness level even though one will result in a shorter standard range. This can happen for a number of reasons, such as where different serious violent offenses have the same seriousness level but receive different offender scores[2] or where, as here, one offense

---

[2] For example, if a defendant's serious violent offense convictions are for first degree rape and first degree assault, both seriousness level XII, a prior history of sex offense convictions may result in a higher offender score—and thus a higher standard range—on the rape charge than on the assault charge. *See* RCW 9.94A.525(17). This could also happen where a defendant has been convicted of two serious violent offenses with the same seriousness level (e.g., first degree rape and first degree assault), as well as a third offense that is not a serious violent offense (e.g., burglary) but that constitutes the same criminal conduct as one of the serious violent offenses (e.g., the assault). In that case, all other things being equal, the sentence for the rape would likely be higher because the

has been completed and another is anticipatory and thus subject to the 75 percent sentencing rule set forth in RCW 9.94A.595.

In these situations, RCW 9.94A.589(1)(b) provides no guidance on which offense should serve as the basis for the serious violent offender calculations. Thus, the statute could plausibly be read to provide for two different possible sentences—a longer overall sentence predicated on the completed assault or a shorter sentence predicated on the conspiracy. This is exactly what accounts for the split of authority in our Court of Appeals. *Compare Weatherwax*, 193 Wn. App. at 676 (choosing higher sentence), *with Breaux*, 167 Wn. App. at 179 (choosing lower sentence).

### B. RCW 9.94A.589(1)(b)'s Silence on This Point Is Ambiguous

A statute is ambiguous "[i]f more than one interpretation of the plain language is reasonable." *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). The fact that different divisions of our Court of Appeals have considered the same statute and arrived at opposite interpretations can indicate such ambiguity. *State v. McGee*, 122 Wn.2d 783, 797, 864 P.2d 912 (1993) (Johnson, J., dissenting) ("I find this split determinative on the issue this statute can be interpreted two reasonable ways.").

---

burglary would count toward the offender score for that crime, but could not count toward the offender score for the assault (because it is the same criminal conduct). RCW 9.94A.589(1)(a); FINE & ENDE, *supra* n.1.

Using this definition, RCW 9.94A.589(1)(b) is ambiguous about which of several offenses with equally "highest seriousness level[s]" should form the basis for serious violent offense consecutive sentencing. As the Court of Appeals explained in *Breaux*, relying on its prior conclusion that anticipatory offenses had the same seriousness level as their target offenses, the statute does not provide clear direction on this point. 167 Wn. App. at 177-78. In light of that, and given the statute's failure to provide guidance when two offenses have the same seriousness level, the *Breaux* court ruled that it was at least reasonable to believe that the legislature could have intended either offense to serve as the predicate offense for sentencing purposes. *Id.* at 179.

We agree. RCW 9.94A.589(1)(b) could plausibly be interpreted either way and, hence, is ambiguous on this point.

### C. The Rule of Lenity Requires Imposing the Lesser of the Two Possible Sentences in This Case

In this situation, the rule of lenity requires us to interpret the statute strictly in favor of the defendant. *Conover*, 183 Wn.2d at 712; *see also State v. Tvedt*, 153 Wn.2d 705, 710-11, 107 P.3d 728 (2005) ("'[W]hen choice has to be made between two readings of what conduct [the legislature] has made a crime, it is appropriate, before we choose the harsher alternative, to require that [the legislature] should have spoken in language that is clear and definite.'" (quoting *United States v. Universal*

18

*C.I.T. Credit Corp.*, 344 U.S. 218, 222, 73 S. Ct. 227, 97 L. Ed. 260 (1952))). The underlying rationale for the rule of lenity is to place the burden on the legislature to be clear and definite in criminalizing conduct and establishing criminal penalties. *See Tvedt*, 153 Wn.2d at 710-11; *State v. Brown*, 145 Wn. App. 62, 80, 184 P.3d 1284 (2008).

Our holding that anticipatory offenses have the same seriousness level as their target crimes does not create ambiguity in every case, nor does it always result in lower sentences, as the State points out. But because, in this case, Weatherwax's and Rodgers's sentences could plausibly be calculated in two different ways under the statute as written, the rule of lenity requires us to construe the statute as directing trial courts to choose the offense that will yield the lower of the two possible sentences.

## CONCLUSION

We hold that for purposes of RCW 9.94A.589(1)(b), (1) anticipatory offenses have the same seriousness level as their target crimes and (2) when the seriousness levels of two or more serious violent offenses are identical, the trial court must choose the offense whose standard range is lower as the starting point for calculating the consecutive sentences. We reverse and remand for resentencing consistent with this opinion.

González, J.

WE CONCUR:

Fairhurst, C.J.

Stephens, J.

Johnson, J.

González, J.

Madsen, J.

Wiggins, J.

Owens, J.

Yu, J.

20