IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35546-2-III |
| Respondent, | ) | (cons. with No. 35971-9-III) |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| PEGGY COLLEEN KNOTT, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — The trial court convicted appellant Peggy Knott with two counts of possession with intent to deliver a controlled substance and three counts of delivery of a controlled substance. On appeal, Knott challenges her sentence. She contends her trial counsel ineffectively represented her at sentencing because counsel failed to ask for a downward exceptional sentence based on the multiple offense policy. She also contends a community custody condition is unconstitutional and the trial court erroneously imposed a legal financial obligation to pay costs of her incarceration. We affirm the length of Knott's sentence, but remand to modify the community custody condition and to strike the legal financial obligation.

FACTS

Peggy Knott sold methamphetamine to a single police informant on three occasions between December 21, 2016, and January 2, 2017. Each sale occurred within a school zone. Law enforcement later executed a search warrant at Knott's home and discovered methamphetamine, morphine, and Oxycodone.

PROCEDURE

The State of Washington charged Peggy Knott with one count of possession with intent to deliver a controlled substance, methamphetamine, one count of possession with intent to deliver a controlled substance, morphine, and one count of possession with intent to deliver a controlled substance, Oxycodone, all three counts based on the controlled substances found inside Knott's home. The State also charged Knott with three counts of delivery of a controlled substance, methamphetamine, based on the sales to the informant.

After a bench trial, the trial court convicted Knott on all counts but possession with intent to deliver morphine. The court instead found Knott guilty of the lesser charge of possession of a controlled substance, morphine. The court also found that school zone enhancements applied to all counts except for possession of morphine. The trial court sentenced Peggy Knott to the statutory maximum of ten years, while imposing five school zone enhancements consecutively to one another.

Peggy Knott filed a notice of appeal. Thereafter, the State and defense counsel

2

received an e-mail from the Department of Corrections (DOC) asking for clarification or correction of Knott's sentence because DOC believed the school zone enhancements could not run consecutive to each other.

The trial court resentenced Peggy Knott. During resentencing, the State asked the sentencing court to sentence Knott above the standard range because of aggravating factors, including Knott's child residing at the home where law enforcement found controlled substances. Knott's attorney asked the court to grant a parenting sentencing alternative or drug offender sentence alternative or impose a sentence in the low end of the standard range. He never sought a downward exceptional sentence.

At resentencing, the trial court imposed a mid-range sentence of 48 months with concurrent sentence enhancements of 24 months for a total of 72 months' confinement. When sentencing Knott, the court commented:

> Starting with that last part first, I do not believe that either the parenting sentencing alternative or the drug offender sentencing alternative are appropriate sentencing at this point in time. Ms. Knott,—obviously you thought those were appropriate ways of resolving these matters I think this matter would have been handled or dealt with in somewhat of a different way. I think they're being looked at now as a way to go ahead and try to minimize your potential overall exposure in these cases.
> . . . .
> With regards to Counts 1, 3, 4, 5 and 6, the court is going to go ahead and impose a sentence of 48 months on those plus the 24-month enhancement—so—be a total of 72 months on Counts 1, 3, 4, 5 and 6. Count 2 the court is going to go ahead and impose the 12 plus one day on those.
> The factor—reason that I'm imposing the 48 months is—Ms. Knott, you have a substantial history that has racked up in just a short period of

3

time.  There are multiple different deliveries over a period of time in this case.  You've obviously gone out and violated the conditions of release afterwards by using a controlled substance in this case.—[O]bviously going to continue this enterprise, this drug dealing enterprise, even beyond those times when you—did the deliveries, evidenced by the multiple drugs that were found in your homes and the operation that you were operating in your home.  So—gives the court great concerns that you were going to continue this enterprise well beyond what was done for a short period of time.

But the court also recognizes that you have no prior criminal history coming into this, and I don't find that you were doing this to become a wealthy drug lord in this matter,—these were small deliveries done I think to essentially to substantiate or—support your own habit that you have and the drug addiction habit that you have.  So I do find that—sentence of 48 months on Counts 1, 3, 4, 5 and 6 are appropriate plus the 24-month enhancement (inaudible) 1, 3, 4, 5 and 6 and that the 12-plus—12-plus-one-day to be run concurrently as well.

Report of Proceedings (Oct. 19, 2017) at 39-44.

During the resentencing hearing, the trial court did not inquire into Peggy Knott's ability to pay legal financial obligations.  The sentencing court entered a finding that Knott had the present means to contribute to the cost of her incarceration.  The court checked the box requiring Knott to contribute to the costs of her incarceration, but ordered no rate of payment per day.  The resentencing court also imposed a condition of Knott's community custody requiring that she "not associate nor have contact with persons with felony convictions, except as approved by the Department [of Corrections]." Clerk's Papers (CP) at 153.  Peggy Knott also appealed her resentencing.

LAW AND ANALYSIS

On appeal, Peggy Knott assigns three errors to her resentencing.  First, her defense

counsel performed ineffectively by failing to raise the multiple offense policy and omitting a request for an exceptional sentence downward.  Second, the community custody ban of contact with persons with felony convictions is unconstitutional.  Third, the resentencing court erred when imposing on her the cost of incarceration without inquiring into her ability to pay.

Multiple Offense Doctrine

Peggy Knott contends that her defense counsel should have asked the court to impose an exceptional sentence below the standard range or, at least, have argued the "multiple offense policy" as a basis for a sentence at the lower end.  Because counsel did neither, Knott argues she received ineffective assistance at her resentencing hearing.  The State argues that Knott fails to establish either prong of ineffective assistance of counsel.  We agree that Knott fails to show prejudice and do not address whether Knott establishes deficient representation.

A claim of ineffective assistance of counsel is an issue of constitutional magnitude that can be raised for the first time on appeal.  *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009); RAP 2.5(a).  To establish ineffective assistance of counsel, a defendant must satisfy a two-prong test: (1) that his or her counsel's assistance was objectively unreasonable, and (2) that, as a result of counsel's deficient assistance, he or she suffered prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The defendant must establish both prongs of an ineffective assistance of

5

counsel claim. *Strickland v. Washington*, 466 U.S. at 687.

In Washington, a sentencing court may impose a prison term below the standard range if the court finds that mitigating circumstances are established by a preponderance of the evidence. RCW 9.94A.535(1). The statute allows an exceptional sentence downward when "[t]he operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A.010." RCW 9.94A.535(1)(g). This mitigating factor applies when multiple delivery convictions result from a series of police initiated controlled buys. *State v. Sanchez*, 69 Wn. App. 255, 848 P.2d 208 (1993); *State v. Hortman*, 76 Wn. App. 454, 886 P.2d 234 (1994). Otherwise, law enforcement could continue to purchase controlled substances from the accused in a string of controlled buys in order to significantly increase the accused's sentence. In *Hortman*, the Court of Appeals noted:

> The court's role in these situations is to focus on the difference, if any, between the effects of the first controlled buy and the cumulative effects of subsequent controlled buys. Where that difference is nonexistent, trivial or trifling, there is a basis in law for an exceptional sentence downward.

*State v. Hortman*, 76 Wn. App. at 461. Peggy Knott argues that her second and third deliveries to the confidential informant added little or nothing to her culpability.

Peggy Knott, relying principally on *State v. McGill*, 112 Wn. App. 95, 47 P.3d 173 (2002), argues that defense counsel's failure to seek an exceptional sentence under the

6

multiple offense policy deprived her of the effective assistance of counsel.  In *McGill*, the

State convicted Keith McGill of three counts of delivery of cocaine.  The Kent Police

Department used a confidential informant to purchase the cocaine from McGill.  McGill

appealed his standard range sentence by arguing ineffective assistance because his

attorney did not argue for an exceptional sentence below the standard range and failed to

cite *Sanchez* or *Hortman* to the sentencing court.  When sentencing McGill, the trial court

remarked:

> I'm sure you are aware that the legislature has decided that judges
> should not have discretion beyond a certain sentencing range on these
> matters.  And sometimes some of these drug cases, it seems like, when you
> compare them to some of the really violent and dangerous offenses, it
> doesn't seem to be justified.  But it's not my call to determine the standard
> range.  The legislature has done that for me.
> So I have no option but to sentence you within the range on these of
> 87 months to 116 months.  But I do get to decide where in that range the
> sentence is appropriate.

*State v. McGill*, 112 Wn. App. at 98-99.  The Court of Appeals held that McGill was

denied effective assistance of counsel at sentencing when defense counsel failed to cite

the relevant case law.  The court noted that a trial court cannot exercise its discretion if

counsel fails to inform the court of the discretion it has to exercise.  The court vacated

McGill's sentence and remanded for a new sentencing hearing.

The State convicted Peggy Knott similarly of three counts of delivery of a

controlled substance after selling to the same confidential informant.  Knott sold the same

substance on each occasion within twelve days. Knott argues that, under these circumstances, her defense counsel should have cited the relevant precedent and informed the sentencing court that it could impose an exceptional sentence downward. According to Knott, counsel should have argued that a standard range sentence resulted in an excessive sentence because law enforcement should have arrested her after the first sale rather than attempting to increase her sentence by additional purchases.

The State contends that Peggy Knott's sentencing court, unlike the sentencing court in *McGill*, knew of its discretion to impose an exceptional sentence downward. The State astutely emphasizes that Knott's trial court rejected the State's request for an exceptional sentence upward based on aggravating factors and rejected Knott's request for a reduced sentence through the drug offender sentencing alternative and the parenting sentencing alternative. Nevertheless, we deem the State's argument, although accurate to the facts, irrelevant as to whether trial defense counsel should have requested a downward exceptional sentence based on the multiple offense policy. The State's argument bears on prejudice.

We conclude that Peggy Knott fails to show probable prejudice. Unlike the sentencing court in *McGill*, Knott's court never lamented the lack of discretion or complained about the length of drug sentences. As noted by the State, Knott's sentencing court weighed evidence when assessing whether to grant an exceptional sentence on other grounds. The court noted that the charges occurred during a short window of time, but

8

also observed that Knott likely would have continued her enterprise if not stopped by law enforcement. Because of the stash of drugs found in her home, she likely engaged in other sales not discovered. She violated conditions of her release from confinement.

Prejudice is established when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *In re Personal Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). Knott carries the burden of establishing prejudice. *Strickland v. Washington*, 466 U.S. at 687 (1984). Knott does not satisfy this burden because she does not show the sentencing court would have likely lowered her sentence based on the multiple offense policy.

## Community Custody Condition

The sentencing court ordered Peggy Knott, as part of her twelve months of community custody, "not to associate nor have contact with persons with felony convictions, except as approved by the Department." CP at 152. Knott asserts that the condition is unduly and unconstitutionally vague because it fails to provide her with sufficient notice of what constitutes "associating" or "having contact" with one with a felony conviction. Knott soundly observes that she could be penalized for an interaction with a felon without her knowing the person to possess a felony conviction. Knott does not complain about the language concerning approval by the Department of Corrections. Knott impliedly asks this court to strike the entire community custody condition rather than narrow its terms. She does not ask that the condition be limited to felons with

controlled substance convictions. The State argues the provision is both a reasonable exercise of discretion and sufficient to place a reasonable person on notice of prohibited conduct.

We agree with Peggy Knott that the community custody condition suffers from vagueness, but refuse to strike the condition in its entirety. Instead we remand for the trial court to reform the community custody condition to read: "not to associate nor have contact with any person whom defendant knows to have a felony conviction, except as approved by the Department."

The guaranty of due process, contained in the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, precludes vague laws. *State v. Irwin*, 191 Wn. App. 644, 652, 364 P.3d 830 (2015). The due process vagueness doctrine requires that citizens have fair warning of proscribed conduct. *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990). A statute is unconstitutionally vague if it (1) does not define the criminal offense with sufficient definiteness that an ordinary person can understand what conduct is proscribed, or (2) does not provide ascertainable standards of guilt to protect against arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d. 903 (1983); *State v. Bahl*, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008). If persons of ordinary intelligence are able to understand what the law proscribes, notwithstanding some possible areas of disagreement, the law is sufficiently definite. *State v. Bahl*, 164

10

Wn.2d at 754.

A defendant may assert vagueness challenges to conditions of community custody for the first time on appeal. *State v. Bahl*, 164 Wn.2d at 745. A community custody condition that is manifestly unreasonable will be reversed. The imposition of an unconstitutional condition is always manifestly unreasonable. *State v. Sanchez Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010). Unlike legislative enactments, we do not presume the constitutional validity of community custody conditions. *State v. Irwin*, 191 Wn. App. at 652. A community custody condition is not unconstitutionally vague simply because a person cannot predict with complete certainty the exact point at which his or her actions would be classified as prohibited conduct. *State v. Sanchez Valencia*, 169 Wn.2d at 793.

Peggy Knott correctly notes that the restriction on association implicates the First Amendment. When a condition of community placement concerns material protected under the First Amendment, "a vague standard can cause a chilling effect on the exercise of sensitive First Amendment freedoms." *State v. Bahl*, 164 Wn.2d at 753. For this reason, restrictions implicating First Amendment rights, such as freedom of association, must be clear and must be reasonably necessary to accomplish essential state needs and public order. *State v. Riley*, 121 Wn.2d 22, 37-38, 846 P.2d 1365 (1993).

Three state decisions and two federal decisions inform our analysis. First, in *State v. Weatherwax*, 193 Wn. App. 667, 376 P.3d 1150 (2016) *rev'd on other grounds*, 188

11

Wn.2d 139, 392 P.3d 1054 (2017), two defendants challenged identical community

custody conditions that "the defendant not be allowed to have any association or contact

with known felons or gang members or their associates." *State v. Weatherwax*, 193 Wn.

App. at 680. This court took issue with the term "or their associates" because the

condition encompassed those who may have only a social connection to an individual

gang member. This court held the condition unconstitutionally vague absent a showing

that the word "associates" was intended to have the meaning as defined by RCW

9.94A.030(13). The defendants did not challenge the words "association or contact."

Second, in *State v. Riley*, 121 Wn.2d 22 (1993), our Supreme Court upheld a

sentencing condition that prohibited a convicted computer hacker from "owning a

computer, associating with other computer hackers, and communicating with computer

bulletin boards." *State v. Riley*, 121 Wn.2d at 36. The court held that these conditions

would help the defendant from committing further criminal conduct and were reasonably

related to the defendant's convictions of computer trespass. The court held that the

conditions were not an unconstitutional restriction on the offender's freedom of

association.

Third, in *State v. Hearn*, 131 Wn. App. 601, 128 P.3d 139 (2006), Tami Hearn,

convicted of drug possession, challenged the constitutionality of a community custody

placement restriction that she refrain from "associating with known drug offenders."

*State v. Hearn*, 131 Wn. App. at 607. Relying on *Riley*, this court held that the restriction

12

on Hearn's ability to associate with known drug offenders was constitutional because the conditions would help prevent Hearn from further criminal conduct.

Fourth, in *United States v. Soltero*, 510 F.3d 858 (9th Cir. 2007), the court held the verb "associate" was not impermissibly vague when confronted with the following condition: "The defendant shall not associate with any known member of any criminal street gang . . . as directed by the Probation Officer, specifically, any known member of the Delhi street gang." *Soltero*, 510 F.3d at 865. The identification of the specific street gang insulated the condition from a vagueness challenge.

Fifth, in *United States v. Vega*, 545 F.3d 743 (9th Cir. 2008), the court analyzed a condition nearly identical to that in *Soltero*. Unlike the condition in *Soltero* that expressly stated the defendant shall not associate with any *known* member, the condition in *Vega* was not limited to known members. Therefore, Raul Vega argued that he might face penalties for unknowingly violating the condition by associating with someone whom he did not know to be a street gang member. The *Vega* court applied the presumption that prohibited criminal acts require the mens rea element. *United States v. Vega*, 545 F.3d at 750. Thus, the court read the condition to prohibit *knowing* association with members of a criminal street gang and held the condition not impermissibly vague.

Based on the five decisions, we hold that the verbs "associate" and "have contact" pass constitutional muster provided the object of the association and contact is known. We further hold that a condition may not restrict the defendant from contact with a felon

13

regardless of whether the defendant knows the person holds a felony conviction. The condition must be limited to precluding contact with one that the defendant knows has been convicted of a felony. Since Peggy Knott does not argue that the restriction must be limited to those with drug convictions, as opposed to other felonies, we do not address this narrower question.

Cost of Incarceration

Finally, Peggy Knott argues the sentencing court exceeded its authority by ordering Knott to pay for the cost of incarceration without evaluating her ability to pay. The court checked a box in the amended judgment and sentence that required Knott to pay the cost of her incarceration. But, the court failed to insert the rate of pay per day. Knott correctly asserts that a sentencing court may only order a person to pay the cost of his or her incarceration on finding that he or she "at the time of sentencing, has the means to pay the cost of incarceration." RCW 9.94A.760(3). The sentencing court did not conduct an inquiry into Knott's financial situation at either sentencing hearing.

The State agrees with Peggy Knott that the sentencing court conducted no inquiry into Knott's ability to pay. The State believes that the trial court inadvertently checked the box requiring payment of incarceration and asks this court to determine the appropriate remedy. The remedy for clerical or scrivener's error in judgment and sentence forms is remand to the trial court for correction. CrR 7.8(a); *In re Personal Restrain of Mayer*, 128 Wn. App. 694, 701-02, 117 P.3d 353 (2005). We direct this

14

No. 35546-2-III (consol. w/35971-9-III)
*State v. Knott*

remedy.

## CONCLUSION

We affirm Peggy Knott's sentence's length of confinement. We remand for resentencing for the purposes of striking the financial obligation of paying for incarceration and modifying the community custody condition in conformance with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Siddoway, J.

Pennell, A.C.J.

15