

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE MAY 04 2017
~~Fairhust, CJ~~
**CHIEF JUSTICE**

This opinion was filed for record
at 8:00 am on May 4, 2017

for SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | No. 92389-2 |
| v. | ) | |
| | ) | |
| FABIAN ARREDONDO, | ) | EN BANC |
| | ) | |
| Petitioner. | ) | |
| | ) | |
| and | ) | FILED ___ MAY 04 2017 ___ |
| | ) | |
| RUDY MADRIGAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

FAIRHURST, C.J.—Fabian Arredondo appeals his accomplice liability convictions of one count of second degree murder and three counts of first degree assault. A jury found beyond a reasonable doubt that Arredondo, a Norteño gang member, drove a vehicle from which his cousin and fellow Norteño, Rudy Madrigal, fired gunshots into a vehicle occupied by alleged Sureño gang members. One shot

struck the driver, Ladislado Avila, in the head, and he later died at the hospital as a result of his gunshot wound.

The Court of Appeals affirmed. *State v. Arredondo*, 190 Wn. App. 512, 360 P.3d 920 (2015). We granted Arredondo's petition for review on only two issues, both of which were trial court rulings on motions in limine. *State v. Arredondo*, 185 Wn.2d 1024, 369 P.3d 502 (2016). First, the trial court allowed the State to introduce ER 404(b) evidence linking Arredondo to an uncharged February 9, 2009 drive-by shooting. Second, the trial court barred Arredondo from cross-examining the State's key witness, Maurice Simon, about Simon's past mental health diagnoses, as well as past alcohol and drug use. Simon would later testify that Arredondo admitted his role in the shooting to him while they shared a jail cell.

In neither instance did the trial court commit reversible error. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.    Factual background

Late in the evening of December 4, 2009, Arredondo and Madrigal attended a party in Toppenish along with other Norteños. Sureños Miguel Vasquez, Avila, and Gabriel Rodarte attended the party as well. The local Norteño and Sureño gangs have a history of bad blood. A fistfight ensued shortly after the Sureños arrived. Vasquez was involved and appeared to get the worst of it. Once the fistfight ended, partygoers dispersed. Rodarte, Vasquez, and Avila left together, along with

2

Maximino Castillo, to whom they offered a ride as they were leaving. Of these four, only Rodarte and Castillo testified at trial.[1]

Shortly after leaving the party, Avila and his passengers noticed a blue Honda with tinted windows headed in the opposite direction of their car. The Honda made a U-turn and began to follow them. This eventually led to a high speed chase. The chase terminated when someone in the Honda fired shots into Avila's car. The Toppenish Police Department received a shots fired call at 1:10 a.m. on December 5, 2009. One of the shots struck Avila in the head. He lost control of the vehicle and crashed into a tree. Avila later died at the hospital from his gunshot wound. His passengers were not seriously injured. Neither Rodarte nor Castillo could identify the Honda's occupants, other than to say they looked like two males.

On December 12, 2009, the Toppenish police recovered a vehicle matching the Honda used in the shooting. It was parked between two businesses on a gravel drive in Wapato and had been wiped clean of all incriminating evidence. The police were unable to recover fingerprint, deoxyribonucleic acid, or any other physical evidence from the vehicle.

Arredondo was arrested that same day based on statements from others who attended the party. They indicated Arredondo drove the Honda during the shooting. In the days following his arrest, Arredondo shared a cell with Simon in the Yakima

---

[1] Avila was killed in the events to follow, and Vasquez was not available to testify.

County jail. Simon later claimed that during their time in the cell, Arredondo admitted his role in the shooting.

B.    Motions in limine

Prior to the trial, Arredondo made a motion in limine to bar evidence the State sought to introduce pursuant to ER 404(b) of Arredondo's involvement in a previous drive-by shooting with suspected Norteño/Sureño gang ties. He was never charged in the incident. Following offers of proof, the trial court ruled the State could present testimony from Detectives Dustin Dunn and Jaban Brownell relating to this incident for noncharacter purposes. It did so after finding that the evidence had probative value and that the "probative value outweighs the prejudicial effect." Suppl. to Oct. 10, 2011 Verbatim Report of Proceedings (SVRP) at 26-27.

Arredondo also made a motion in limine for the trial court to determine what scope limitations would apply to his cross-examination of Simon regarding Simon's previous mental health diagnoses and past drug and alcohol use. This motion followed a pretrial interview in which Simon indicated that he had previously been diagnosed with posttraumatic stress disorder (PTSD) and other mental health limitations. Simon also indicated in the interview that he had been an alcoholic and drug abuser in the past.

The court said it would withhold its ruling on the motion until it had a chance to "listen to [Simon] outside the presence of the jury." SVRP at 9. When that

4

occurred, Simon described his past mental health diagnoses, short-term memory limitations, and previous drug and alcohol use. Simon also indicated that none of these issues would affect his testimony regarding Arredondo's admission. He further indicated that he had not used drugs or alcohol in the prior six to eight months. The court then barred inquiries during cross-examination into Simon's mental health or his past substance abuse because Simon did not appear currently impaired and evidence associated with previous limitations would be irrelevant, not probative, and highly prejudicial.

C.    Arredondo's trial

Arredondo testified in his own defense and indicated he had no role in the December 5, 2009 shooting. He claimed he left the party with his friend Gabriel Limone in a white Chevrolet Impala and that they went directly to his uncle's house from the party. Limone was not available to testify to confirm this account. Effrain Arredondo, Arredondo's uncle, was available. He testified that his nephew arrived at his house between 12:00 and 12:15 a.m. the morning of December 5, 2009 and did not leave again until 9:30 a.m. that same morning.

The State presented little evidence directly linking Arredondo to the shooting. As the trial court noted, the case had a "strong undercurrent of intimidation . . . . Many of the witnesses are -- are visibly afraid to be here and to be testifying." 3 Verbatim Report of Proceedings (VRP) (Oct. 13, 2011) at 405. For example,

5

Arredondo refused to say who at the party had firearms because it would be dangerous for him to "talk against another Norteno." 6 VRP (Oct. 19, 2011) at 789-90, 793.

Maria Marquez Vevallos was one of the only people to testify who had attended the party. She indicated that her brother, Alberto Marquez, owned a blue Honda Accord and he indicated that night that he lent it to some "homeys." 4 VRP (Oct. 17, 2011) at 544-45. She believed Arredondo was the "homey" her brother referenced. *Id.* at 548. She also indicated she had not seen the vehicle since the party. Her brother was not available to testify.

Consistent with an offer of proof previously provided by the State, Detectives Dunn and Brownell testified that on February 9, 2009, they were dispatched to the scene of a drive-by shooting in a known Sureño gang neighborhood. The victim claimed the shooting came from a vehicle resembling a Mercedes. Dunn located a .38 caliber spent shell casing at the scene. Two weeks later, Community Corrections Officer (CCO) Michael Hisey and Probation Officer Jim Stine visited Arredondo at his home regarding an unrelated matter. Upon arriving, they noticed a silver Mercedes. They located keys to the vehicle in Arredondo's pocket and, upon searching the vehicle, found a .38 caliber spent shell casing in the car. The Washington State Patrol Crime Laboratory confirmed that the shell casing in the

6

Mercedes matched the one that Dunn recovered at the scene of the February 9, 2009 shooting and that both casings were fired from the same weapon.

Before Officer Dunn's testimony on the February 9, 2009 shooting, the trial court instructed the jury that his testimony could be used only for purposes of "issues of identity and motive and intent" and could not be used to determine if Arredondo "acted in a similar fashion on February the 9th of 2009 to what he's alleged to have done on December the 5th of 2009." 4 VRP at 466. Similarly, prior to CCO Hisey's testimony, the court instructed the jury to "consider testimony relating to that alleged event [as] appl[ying] equally to this witness's testimony." *Id.* at 479. Finally, following the trial, the court issued written jury instructions to consider this evidence only for purposes of defendant's "alleged intent, motive and/or identity" and not for any other purpose. Clerk's Papers (CP) at 63. The trial court asked whether Arredondo had any objections to this written jury instruction on multiple occasions. Arredondo indicated he had none.

Simon told the jury that he and Arredondo shared time in a cell together and during that time, Arredondo admitted his role in the December 5, 2009 drive-by shooting. Simon's testimony included details he would not otherwise have reason to know, including the fact that Arredondo used a Honda Accord that he wiped down before ditching, that his uncle would provide him an alibi for that evening, and that "he wouldn't have been in there if it weren't for his stupid cousin who had ran his

7

mouth in front of a couple people who ended up reporting it." 5 VRP (Oct. 18, 2011) at 573. Simon also testified that Arredondo disclosed the names of some of the victims and others present at the party who Arredondo was concerned may implicate him in the shooting. Both Simon and Detective Brownell confirmed that Simon approached law enforcement with this information. They did not seek him out.

The jury returned a guilty verdict on all charges: Avila's second degree murder count and the first degree assault count on Vasquez, Rodarte, and Castillo. The trial court issued a judgment and sentence consistent with this verdict.

D.     Subsequent procedural history

Arredondo appealed several rulings to the Court of Appeals, including whether the trial court's holding allowing introduction of evidence of the prior drive-by shooting was reversible error and whether the trial court's ruling barring cross-examination into Simon's mental health and past drug use was a violation of Arredondo's confrontation right. *See* CONST. amend VI. In a published decision, the Court of Appeals upheld the trial court on all counts. *Arredondo*, 190 Wn. App. at 512. We granted review on only the ER 404(b) and cross-examination issues. Order, *State v. Arredondo*, No. 92389-2 (Wash. Apr. 29, 2016).

## II. ISSUES[2]

A.    Did the trial court abuse its discretion in allowing the State to introduce evidence of Arredondo's involvement in the February 9, 2009 drive-by shooting?

B.    Did the trial court abuse its discretion when it barred inquiry into Simon's mental state during cross-examination?

## III. ANALYSIS

The trial court did not abuse its discretion and, therefore, did not commit error when admitting evidence of the February 9, 2009 drive-by shooting. It reasonably applied the relevant standard under ER 404(b) in admitting such evidence. Nor did the trial court abuse its discretion and thereby violate Arredondo's confrontation right under the Sixth Amendment to the federal constitution when barring questions into Simon's mental state. It reasonably held the evidence irrelevant, not probative, and highly prejudicial, consistent with the standards this court articulated in *State v. Darden*, 145 Wn.2d 612, 41 P.3d 1189 (2002).

A.    The trial court did not abuse its discretion in admitting evidence of Arredondo's involvement in the February 9, 2009 drive-by shooting

1.    Standard of review

The interpretation of an evidentiary rule is a question of law that we review de novo. *Diaz v. State*, 175 Wn.2d 457, 461-62, 285 P.3d 873 (2012) (citing *State v.*

---

[2] Arredondo, in his supplemental brief, raises cumulative error for the first time. This is improper and in any event is without merit.

9

*Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007)). So long as the trial court interpreted the rule correctly, we will review its decision to admit or exclude evidence under ER 404(b) for "an abuse of discretion." *State v. Gresham*, 173 Wn.2d 405, 419, 263 P.3d 207 (2012) (citing *Foxhoven*, 161 Wn.2d at 174). "Abuse of discretion" means "no reasonable judge would have ruled as the trial court did." *State v. Mason*, 160 Wn.2d 910, 934, 162 P.3d 396 (2007) (citing *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)). Put another way, to reverse we must find the decision is "'unreasonable or is based on untenable reasons or grounds.'" *Id.* at 922 (quoting *State v. C.J.*, 148 Wn.2d 672, 686, 63 P.3d 765 (2003)).

> 2. The trial court reasonably applied ER 404(b)
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b).

In order for a trial court to admit evidence of past wrongs, ER 404(b) requires the trial court to

> "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the [permissible] purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

*Gresham*, 173 Wn.2d at 421 (quoting *Vy Thang*, 145 Wn.2d at 642). This analysis must be conducted on the record, and if the evidence is admitted, a limiting instruction is required. *Foxhoven*, 161 Wn.2d at 175. The trial court reasonably applied each prong on the record and issued appropriate limiting instructions. Therefore, it did not abuse its discretion.

> a.    First prong: the trial court reasonably determined that the State met the preponderance of the evidence standard

"The preponderance of the evidence standard requires that the evidence establish the proposition at issue is more probably true than not true." *Mohr v. Grant*, 153 Wn.2d 812, 822, 108 P.3d 768 (2005) (citing *In re Welfare of Sego*, 82 Wn.2d 736, 738 n.2, 513 P.2d 831 (1973)). As with all other prongs, we review the trial court's first-prong assessment for an abuse of discretion. *Gresham*, 173 Wn.2d at 419.[3]

Before presenting evidence to the jury, the State presented a proffer to the trial court that two weeks after a drive-by shooting, a shell casing was found in a Mercedes in Arredondo's control matching a casing found in front of a home targeted in an earlier shooting, the targeted home is in a known Sureño neighborhood, witnesses indicated a Mercedes-like vehicle was responsible for the

---

[3] The relevant standard of review for this or any other prong is not in dispute. Arredondo concedes it is the "abuse of the court's discretion" standard. Pet. for Review at 13. *See State v. Ashley*, 186 Wn.2d 32, 40, 375 P.3d 673 (2016) (unanimous decision applying the abuse of discretion standard to review of a trial court's finding on the first prong of an ER 404(b) claim).

earlier shooting, and Arredondo is an admitted Norteño. Based on these facts, it would be reasonable for a court to conclude that Arredondo was more "probably" than not involved in the incident. *Mohr*, 153 Wn.2d at 822.

Mere evidence of gang affiliation is not sufficient to meet the State's burden. *State v. Asaeli*, 150 Wn. App. 543, 578, 208 P.3d 1136 (2009); *State v. Acosta*, 123 Wn. App. 424, 434, 98 P.3d 503 (2004); *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir. 1993). But the State presented evidence far beyond gang affiliations and other similarly inconclusive evidence. The State presented significant evidence unequivocally tying Arredondo's vehicle to the prior shooting directed at Sureños.[4] Therefore, it was reasonable for the trial court to find this evidence sufficient to meet the preponderance standard.[5]

---

[4] The dissent asserts the State offered no more than "meager evidence that Arredondo or another member of his alleged gang *could* have been" involved in the prior shooting. Dissent at 5. I disagree. Witnesses to the first shooting indicated the perpetrator used a vehicle "like a Mercedes." 4 VRP at 468. Arredondo's uncle testified on direct that he "knows [Arredondo] drives a Mercedes." 5 VRP at 711. When officers arrived at Arredondo's home, they discovered a Mercedes in Arredondo's possession. Upon searching the vehicle, they discovered a spent shell casing that, according to the Washington State Patrol Crime Laboratory, was fired from the *same* weapon as a casing recovered at the scene of the prior shooting. Finally, the prior shooting was in a known Sureño neighborhood and Arredondo is a self-avowed Norteño.

[5] Given the two-week gap between the February 9, 2009 shooting and the subsequent recovery of the matching shell casing in Arredondo's Mercedes, it may be unreasonable for a court to find this evidence meets an evidentiary standard higher than preponderance. But it is not unreasonable to conclude that it is more likely than not that Arredondo's vehicle, and by implication Arredondo, was involved in the shooting.

Although the trial court never specifically referenced the preponderance of the evidence standard when it weighed the State's proffered evidence, a trial court need not explicitly do so when performing an ER 404(b) analysis, so long as a finding that the standard has been met can be implied from a record clearly demonstrating as much. *State v. Stein*, 140 Wn. App. 43, 66, 165 P.3d 16 (2007); *Asaeli*, 150 Wn. App. at 576 n.34. The trial court record meets this benchmark.

  b. Second and third prongs: the trial court reasonably identified the relevant noncharacter purpose(s) for which the evidence was to be admitted

We must guard against using "motive and intent as 'magic passwords whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in their names.'" *State v. Saltarelli*, 98 Wn.2d 358, 364, 655 P.2d 697 (1982) (quoting *United States v. Goodwin*, 492 F.2d 1141, 1155 (5th Cir. 1974)). Here, the trial court did no such thing. It held that the prior incident could be used for motive and intent because it spoke to "Arredondo's animosity towards people who are of the Sureno persuasion." SVRP at 26-27. Such evidence would have been particularly relevant here, where witnesses were unwilling to speak freely. A jury would need to glean motive and intent through other means.

Arredondo asserts such evidence is irrelevant to show motive because "the gang nature of the [December shooting] was never in dispute." Pet'r's Suppl. Br. at 11. This assertion misconstrues what makes evidence relevant. Evidence is

13

"relevant" if it makes the existence of a fact of consequence more or less probable to be true than without the evidence. *State v. Lough*, 125 Wn.2d 847, 861-62, 889 P.2d 487 (1995) (citing ER 401).

As the trial court noted, evidence of a prior drive-by shooting is relevant to assess Arredondo's culpability in the December shooting because it demonstrates Arredondo's particular motive in reacting violently toward Avila, Vasquez, Rodarte, and Castillo for the simple offense of being Sureños at a Norteño party—i.e., a deep-seated animosity toward Sureños. This animosity goes beyond the routine friction between gangs, or even the "history of bad blood" between these particular gangs. 2 VRP (Oct. 12, 2011) at 86.

Arredondo cites *Saltarelli* to support his relevancy argument. 98 Wn.2d at 358. But the case is inapposite. In *Saltarelli*, the State sought to introduce evidence of a previous rape in order to show motive for a current rape. *Id.* at 359. As we pointed out at the time, "[i]t is by no means clear how an assault on a woman could be a motive or inducement for defendant's rape of a different woman almost 5 years later." *Id.* at 365. Therefore, we reasoned that "the evidence seems to achieve no more than to show a general propensity to rape." *Id.* But the evidence of the February 9, 2009 shooting was used here to demonstrate Arredondo's motive and intent in the later shooting, not Arredondo's propensity to engage in drive-by shootings.

14

While the dissent is correct that evidence of a prior shooting directed *at*, rather than *by*, Arredondo would provide a motive for Arredondo to later target Sureño gang members, the opposite is also true. Evidence of a past attack by a defendant toward a victim is admissible pursuant to ER 404(b) if the evidence demonstrates an ill feeling between the two. *State v. Powell*, 126 Wn.2d 244, 260-61, 893 P.2d 615 (1995); *see State v. Stenson*, 132 Wn.2d 668, 702, 940 P.2d 1239 (1997) ("evidence of quarrels and ill-feeling may be admissible to show motive, and evidence of prior threats is also admissible to show motive or malice if the evidence is of consequence to the action." (citing *Powell*, 126 Wn.2d at 260)).[6] Arredondo's involvement in the prior shooting demonstrates the highly strained and toxic relationship between local Norteño and Sureño gang members and the level of Arredondo's animosity toward Sureños.

Arredondo targeted different individuals in the February 9 and December 4, 2009 shootings. But this is of no matter. All victims shared a key common trait— Sureño gang membership. The level of Arredondo's animosity toward a group of people, rather than an individual, is equally relevant in establishing motive. *See,*

---

[6] Other jurisdictions have reached similar holdings. *See, e.g.*, *Bacchus v. United States*, 970 A.2d 269, 274 (D.C. 2009) (defendant's past assault of current victim was admissible to show defendant's motive or intent in current assault); *People v. Dorm*, 12 N.Y.3d 16, 19, 903 N.E.2d 263 (2009) (same); *United States v. Howard*, 692 F.3d 697, 704-05 (7th Cir. 2012) (defendant's past threat toward current victim was permissible under Federal Rule of Evidence 404(b) to show motive for attempted murder of victim).

*e.g.*, *State v. Peerson*, 62 Wn. App. 755, 776, 816 P.2d 43 (1991) (evidence of defendant's earlier assaults on marijuana growers was admissible pursuant to ER 404(b) to demonstrate motive for defendant's later assault and murder of other marijuana growers), *review denied*, 118 Wn.2d 1012, 824 P.2d 491 (1992); *United States v. Woodlee*, 136 F.3d 1399, 1409-10 (10th Cir. 1998) (evidence of defendant's past refusal to attend an event when he learned persons of "'mixed race' would also attend" was admissible pursuant to Federal Rule of Evidence 404(b) to demonstrate defendant's motive in later attacking three African-American men); *United States v. Franklin*, 704 F.2d 1183, 1188-89 (10th Cir. 1983) (evidence of defendant's previous attack on an interracial couple similarly admissible); *State v. Davis*, 6 Idaho 159, 171-72, 53 P. 678, 682 (1898) (evidence of defendant cattleman's previous threats and attacks toward sheepherders was admissible to prove motive for alleged subsequent murder of a sheepherder).

In addition to motive and intent, the trial court indicated the prior shooting "goes to show identity" of the perpetrator of the current shooting. SVRP at 27. But the two incidents do not share a unique modus operandi and are not sufficiently similar to prove identity. *See State v. Smith*, 106 Wn.2d 772, 777, 725 P.2d 951 (1986) ("'The method employed . . . must be so unique that mere proof that an accused committed one . . . creates high probability that he also committed the act charged.'" (emphasis omitted) (quoting *State v. Laureano*, 101 Wn.2d 745, 764, 682

16

P.2d 889 (1984))); *see also Foxhoven*, 161 Wn.2d at 175-77 (evidence of past acts of graffiti could be used to prove identity of the perpetrator in the current crime even though the mediums employed, the styles applied, and the fonts used varied, but only because all instances contained a unique "tag," or identifier). Nevertheless, the trial court's reliance on identity is irrelevant. Motive and intent were a sufficient basis to support introduction of this evidence, and the trial court reasonably concluded that the prior incident demonstrated both. Arredondo had a deep-seated animosity toward Sureños. Based on this motive, he acted with the intent to inflict great bodily harm and/or kill Avila and the occupants of his vehicle.[7] The trial court's finding was not unreasonable.

Arredondo argued for the first time during oral argument to this court that the trial court committed error when it *instructed the jury* that evidence of the earlier shooting could be used for *both* a permissible purpose—motive and intent—*and* an impermissible purpose—identity. But Arredondo provides no citation to support this argument. *See State v. Young*, 89 Wn.2d 613, 625, 574 P.2d 1171 (1978) (if a party does not provide a citation to support an asserted proposition, courts may "'assume that counsel, after diligent search, has found [no supporting authority]'" (quoting

---

[7] Motive and intent are often used interchangeably. They have different meanings. "Motive" speaks to the "cause or reason that moves the will," *Tharp*, 96 Wn.2d at 597, in other words, what prompted a defendant to take criminal action (e.g., attack a victim). "Intent" speaks to the "state of mind with which the act is done," *Powell*, 126 Wn.2d at 261, in other words, what the defendant hopes to accomplish when motivated to take action (e.g., inflict great bodily harm or death). The trial court held Arredondo's deep-seated animosity toward Sureños relevant to *both*.

*DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)); *see also* RAP 10.3(a)(6) (arguments made must include supporting "citations to legal authority").

Even if this argument has merit, the issue is not properly before us. *See State v. Duncan*, 185 Wn.2d 430, 435 n.2, 374 P.3d 83 (2016) (we generally decline to consider arguments not properly before us). Arredondo did not raise the issue in his prior appeal, his petition for review, or his supplemental briefing. *See State v. Brown*, 113 Wn.2d 520, 528-29, 782 P.2d 1013 (1989) (declining to decide whether a jury instruction containing both a permissible *and* impermissible purpose under ER 404(b) was a basis for reversal when the issue was not properly argued on appeal); *see also In re Pers. Restraint of Coats*, 173 Wn.2d 123, 136 n.8, 267 P.3d 324 (2011) (we generally decline consideration of arguments not briefed); *State v. Chamberlin*, 161 Wn.2d 30, 36 n.3, 162 P.3d 389 (2007) (same).

*Most importantly*, Arredondo failed to object to the jury instruction when proposed by the trial court, even though he was given multiple opportunities to do so. *See* 6 VRP at 811-13 (Arredondo failed to raise the issue when the trial court asked, after reviewing the jury instructions, "[A]ny objection to instructions given or not given" or if there were "any further exceptions?"). "An established rule of appellate review in Washington is that a party generally waives the right to appeal

an error unless there is an objection at trial." *State v. Kalebaugh*, 183 Wn.2d 578, 582, 355 P.3d 253 (2015).

The trial court identified a permissible purpose under ER 404(b) for evidence associated with the February shooting to be presented to the jury—motive and intent—and then considered its relevancy in demonstrating Arredondo's mens rea in the December shooting. This is a reasonable application of the second and third prongs of the required ER 404(b) analysis.

      c.      Fourth prong: the trial court reasonably weighed the probative value versus the substantial prejudicial effect of evidence of the prior shooting

Evidence of Arredondo's participation in a prior drive-by shooting would have been highly prejudicial. To properly admit such evidence, the trial court had to reasonably determine that the probative value of the allegation was similarly high. *See Lough*, 125 Wn.2d at 863 ("Because substantial prejudicial effect is inherent in ER 404(b) evidence, uncharged offenses are admissible only if they have substantial probative value."). The court found that the prior shooting had "probative value in identifying [motive and intent] . . . . So, under the circumstances, I believe that the probative value outweighs the prejudicial effect." SVRP at 26-27. Given the apparent code of silence between the witnesses, perpetrators, and victims, the probative value of evidence demonstrating Arredondo's motive to attack Avila and his passengers with an intent to kill or inflict great bodily harm would be particularly

high here. *See Old Chief v. United States*, 519 U.S. 172, 185, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) ("'The probative worth of any particular bit of evidence is obviously affected by the scarcity or abundance of other evidence on the same point.'" (quoting CHARLES ALAN WRIGHT & K. GRAHAM, FEDERAL PRACTICE AND PROCEDURE § 5250, at 546-47 (1978))); Dale A. Nance, *Conditional Probative Value and the Reconstruction of the Federal Rules of Evidence*, 94 MICH. L. REV. 419, 423 (1995) ("the probative value of *every* piece of evidence is conditional upon other evidence").

Arredondo counters that the prejudicial effect from evidence of past unconvicted crimes is impermissibly high because the current jury may "feel that the defendant should be punished somehow, for a broad swath of general criminal wrongdoing." Pet'r's Suppl. Br. at 13 (citing *United States v. Bradley*, 5 F.3d 1317, 1321 (9th Cir. 1993)). But the court gave repeated limiting instructions—both oral instructions before each officer testified as to their findings on the February incident and written instructions following the presentation of all evidence—that the past crime cannot be used to show a propensity to commit the current crime. This instruction mitigated the prejudicial effect of the evidence of the prior shooting. *Lough*, 125 Wn.2d at 864. Juries are presumed to follow the court's instructions, absent evidence to the contrary. *State v. Dye*, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013). Arredondo provides no such evidence.

The trial court reasonably balanced the substantial prejudicial effect of the February shooting against its substantial probative value. Absent substituting our own judgment, we cannot find the trial court's decision unreasonable.

Because the trial court reasonably applied the four prongs articulated above, it did not abuse its discretion. We affirm on the ER 404(b) issue.

B.     The trial court did not abuse its discretion when it barred cross-examination into Simon's mental state

1.     Standard of review

We review a cross-examination scope limitation for a manifest abuse of discretion.[8] *State v. Garcia*, 179 Wn.2d 828, 844, 318 P.3d 266 (2014); *Darden*, 145 Wn.2d at 619. A manifest abuse of discretion arises when "the trial court's exercise of discretion is 'manifestly unreasonable or based upon untenable grounds or reasons.'" *Darden*, 145 Wn.2d at 619 (quoting *Powell*, 126 Wn.2d at 258).

2.     The right of confrontation

The confrontation clause of the Sixth Amendment (applicable to the State via the Fourteenth Amendment) guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. CONST. amends. VI, XIV. Similarly, article I, section 22 of the Washington Constitution guarantees the right

---

[8] For a ruling barring cross-examination entirely, we apply a de novo standard. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

of a defendant to "meet the witnesses against him face to face."[9] Cross-examination is the "principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). "Whenever the right to confront is denied, the ultimate integrity of this fact-finding process is called into question . . . . As such, the right to confront must be zealously guarded." *Darden*, 145 Wn.2d at 620.

This right is not absolute. "The scope of such cross examination is within the discretion of the trial court." *State v. Russell*, 125 Wn.2d 24, 92, 882 P.2d 747 (1994); *see Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (Trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things . . . prejudice . . . or only marginal[] relevan[ce]."). *Darden* provides a three-step process to determine whether a cross-examination limitation violates the right of confrontation. 145 Wn.2d at 622. *Darden*, in turn, is an evolution of a similar two-part test put forth in *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983). In order for a cross-examination limitation to violate the confrontation clause, the testimony sought by the defendant, but excluded by the trial court, must (1) be minimally relevant and (2) not be so prejudicial as to

---

[9] Neither party argues that article I, section 22 of our constitution provides different confrontation right protections from the Sixth Amendment, so our focus is the Sixth Amendment.

disrupt the fairness of the fact-finding process at trial, and (3) the defendant's need for relevant but prejudicial information must outweigh the State's interest in withholding that information from the finder of fact. *State v. Jones*, 168 Wn.2d 713, 720-21, 230 P.3d 576 (2010) (quoting *Darden*, 145 Wn.2d at 622). No State interest is sufficiently compelling to preclude evidence with highly probative value. *Id.*

3.      Simon's cross-examination

Based on testimony Simon provided to the trial court outside the presence of the jury, the court determined Simon's past mental health diagnoses as well as his admitted previous drug and alcohol use could be excluded from cross-examination because such information was irrelevant, not probative, and highly prejudicial. For the reasons discussed below, these were reasonable findings. Further, Arredondo does not demonstrate that his need for the evidence outweighed the State's interest in withholding it, given the impeachment evidence the trial court did allow him to use during trial. Therefore, the trial court did not abuse its discretion in barring this line of questioning.

a.      Mental health evidence

In *United States v. Love*, the Eighth Circuit Court of Appeals held that a trial court should apply the following factors to assess whether past mental health issues are permissible on cross-examination: "1) the nature of the psychological problems; 2) whether the witness suffered from the condition at the time of the events to which

the witness will testify; [and] 3) the temporal recency or remoteness of the condition." 329 F.3d 981, 984 (8th Cir. 2003) (citing *Boggs v. Collins*, 226 F.3d 728, 742 (6th Cir. 2000)); *see United States v. Robinson*, 583 F.3d 1265, 1274-75 (10th Cir. 2009) (trial court's failure to engage in such searching analysis prior to barring cross-examination was not harmless error); *see also United States v. Sasso*, 59 F.3d 341, 347-48 (2d Cir. 1995) (trial court's searching analysis was sufficient to bar cross-examination implicating mental health issues). These factors provide trial courts an effective means to consider the relevancy, probative value, and prejudicial effect from the disclosure of a witness' mental health limitations. We adopt these factors and apply them here.

Simon admitted during a pretrial defense interview, in response to the question of whether he had ever taken a polygraph exam before, that he had, but he added he failed the exam due to "PTSD, anxiety disorder and depression with intersensitive personality -- interpersonality sensitivities." CP at 166. In order to later assess whether those admitted mental health limitations were a permissible area of inquiry on cross-examination, the trial court elicited testimony from Simon outside the presence of the jury.

Simon confirmed during this testimony that on an application for general assistance unemployment he admitted to having been diagnosed with "depression, problems with concentration and anxiety, PTSD, does not trust people, hypervigilant

due to being homeless, tends to be superficial and distant . . . [, and] [p]roblems with concentration and anxiety." 5 VRP at 561. He also admitted to short-term memory problems resulting from his past drug use. But Simon also claimed,

> [M]y memory is fine. I could tell you what you wore the day we had the interview. I could tell you how many words you said if I really had to count, but you really didn't say that much . . . . Right now as I sit here in this court chair after recollecting over the things I've heard in the few days I was in the cell with Mr. Arredondo, I have no problems remembering.

*Id.* at 561-62.

Based on this testimony, the court concluded Simon's past mental health diagnoses had "nothing to do with Mr. Simon's ability to accurately recall and to describe the events . . . that he is going to be called upon to describe in his testimony." *Id.* at 566-67. Nor did the court "see how short-term memory is implicated here because [Arredondo's disputed confession] isn't something that occurred earlier this morning or last night or something like that. This is something weeks and months ago." *Id.* at 566. The trial court also concluded that "the probative value of inquiry into those is negligible[, yet] [t]he prejudicial effect, on the other hand, is enormous. You could label him as a mental case . . . so that the jury would disbelieve anything he had to say because he has some type of a psychiatric disorder." *Id.* at 567. The trial court then barred "inquiry into Mr. Simon's mental state now or in the past." *Id.*

The trial court's analysis is consistent with the factors described in *Love.* Further, it accurately reflects *Darden*'s first two steps—a reasonable assessment of

25

relevancy and a reasonable comparison of the probative value versus the prejudicial effect of the testimony.[10] Based on this analysis, the court then concluded the mental health evidence was completely irrelevant, nominally probative, and highly prejudicial. These findings and the court's resulting ruling were neither "'manifestly unreasonable [n]or based upon untenable grounds.'" *Darden*, 145 Wn.2d at 619 (quoting *Powell*, 126 Wn.2d at 258).

The Court of Appeals, in affirming the trial court's ruling barring cross-examination into Simon's mental health, contrasted the actions of the trial court with those of the trial courts in *State v. Peterson*, 2 Wn. App. 464, 466, 469 P.2d 980 (1970), and *State v. Froehlich*, 96 Wn.2d 301, 306, 635 P.2d 127 (1981). In those cases, the trial courts abused their discretion by not allowing cross-examination of witnesses' mental states because those witnesses' mental limitations were clearly apparent on the stand. *Id.* Our decision in *Froehlich* should not be interpreted to mean that so long as a witness' mental limitations are not readily apparent from the witness' behavior on the stand, cross-examination regarding his or her mental health

---

[10] Arredondo argues that the trial court improperly based its ruling on Simon's risk of embarrassment rather than the risk of prejudicial effect to the jury from such testimony. This argument is not supported by the record. The trial court's concern over the jury labeling Simon a "mental case" was rooted in the court's fear that such a cross-examination would elicit "an emotional response [rather] than a rational decision by the jury," *Lockwood v. AC&S*, 109 Wn.2d 235, 257, 744 P.2d 605 (1987) and, as a result, "the jury would disbelieve anything he had to say," 5 VRP at 567.

26

is solely at the discretion of the trial court. Given the complexities of mental health limitations, a deeper analysis, as described above, is required.

> b.   Evidence of drug and alcohol use

If a witness' past use of intoxicants has not been shown to produce ongoing mental deficiencies, such use is relevant only if the cross-examining party can demonstrate that the witness was under the influence either at the time the witness observed the events at issue or when the witness is called on to testify. *See, e.g.,* *State v. Thomas*, 150 Wn.2d 821, 863, 83 P.3d 970 (2004); *Russell*, 125 Wn.2d at 83-84; *State v. Benn*, 120 Wn.2d 631, 651, 845 P.2d 289 (1993).

While Simon did admit to short-term memory loss due to past drug and alcohol use, the trial court, as described above, concluded such issues would not affect his testimony regarding Arredondo's admission, which had occurred many months prior. Nor was any evidence presented indicating that Simon was impaired at the time of Arredondo's purported admission to Simon. Indeed, Arredondo failed to mention, when testifying to the jury on his own behalf, that Simon appeared impaired to him when they previously shared a cell. Nor did Arredondo's counsel, after Simon testified to the court outside of the presence of the jury, argue to the trial court that Simon appeared impaired the day of his testimony.

Only on appeal does Arredondo assert Simon's drug and alcohol use could have impaired his testimony and therefore be a relevant line of inquiry. No evidence

27

supports this assertion, other than Simon's admission during a pretrial interview, and again to the court outside the presence of the jury, that he had previously abused drugs and alcohol. But following Simon's admission to the court, he also indicated that he had not abused drugs or alcohol in the prior six to eight months.

Given the lack of evidence supporting a finding of impairment, the trial court's ruling barring inquiry into Simon's past drug and alcohol use was neither "'manifestly unreasonable [n]or based upon untenable grounds.'" *Darden*, 145 Wn.2d at 619 (quoting *Powell*, 126 Wn.2d at 258).

      c.      Arredondo's need to introduce the evidence of Simon's past mental health limitations and drug use was insignificant

Even if the evidence of Simon's past drug use and possible mental health limitations had been marginally relevant, which the court reasonably concluded they were not, Arredondo fails to show that his need to present this prejudicial information to the jury outweighed the State's interest in withholding it. The trial court did not limit Arredondo's attempts to impeach Simon with questions during cross-examination about the terms of Simon's assistance agreement; his prior criminal history, including multiple convictions for crimes of dishonesty; Simon's admission while testifying that he has a "problem staying focused and comprehending sometimes when things run on," 5 VRP at 605-06; and inconsistencies between Simon's testimony on direct examination and the statements he made during his pretrial interview.

28

From this evidence, Arredondo argued at closing that Simon has "a history of felony convictions for crimes of dishonesty," including possession of stolen property, third degree theft, residential burglary, and possession of controlled substances; that he "expects to receive a favorable recommendation" on his current sentence based on his testimony in Arredondo's case; and that he has problems with his "memory." 6 VRP at 843-44. Arredondo also cautioned the jury it "should be concerned about [Simon's] credibility, his intent, his desire to receive favorable treatment, and his memory." *Id.* at 844. Given the arguments Simon made at closing, Arredondo's need to present further impeachment evidence appears negligible. Therefore, he fails to demonstrate satisfaction of *Darden*'s third step.

The trial court reasonably applied *Darden*'s requirements when it barred cross-examination into Simon's mental health and past drug use. It did not abuse its discretion and, as a result, did not violate Arredondo's right of confrontation. We affirm on the confrontation clause issue.

## IV. CONCLUSION

The trial court did not abuse its discretion and thereby did not commit reversible error in admitting evidence for a noncharacter purpose of a previous shooting in which Arredondo was implicated in accordance with ER 404(b). Nor did it abuse its discretion and thereby violate Arredondo's confrontation clause right in

29

barring cross-examination into Simon's prior mental health diagnoses and substance abuse. We affirm.

*State v. Arredondo*, No. 92389-2

_Fairhurst, C.J._

WE CONCUR:

_Madsen, J._

_Owens, J._

_Wiggins, J._

_Yu, J._

No. 92389-2

GONZÁLEZ, J. (dissenting)—Fundamental to our system of justice is the principle that an individual will be tried for the crime he or she is accused of committing, not for crimes allegedly committed in the past. WASH. CONST. art. I, § 22; *State v. Goebel*, 36 Wn.2d 367, 368, 218 P.2d 300 (1950); *Williams v. New York*, 337 U.S. 241, 246, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949) ("the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he [or she] has been specifically accused"). In criminal trials, we generally do not judge people or their acts by their character or past conduct. 1A JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 54.1, at 1156 (Tillers rev. 1983); *United States v. Foskey*, 636 F.2d 517, 523 (D.C. Cir. 1980) (this precept is "fundamental to American jurisprudence"); *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir. 1977) ("concomitant of the presumption of innocence is that a defendant must be tried for what he [or she] did, not for who he [or she] is").

Evidence of a person's character, offered to prove the person acted in conformity with that character on a particular occasion, is forbidden. ER 404(b); *State v. Everybodytalksabout*, 145 Wn.2d 456, 465-66, 39 P.3d 294 (2002); *State v.*

*Mee*, 168 Wn. App. 144, 153-54, 275 P.3d 1192 (2012). Our law does not discriminate between the good and the bad in its safeguards. "The protection of the law is due alike to the righteous and the unrighteous. The sun of justice shines alike 'for the evil and the good, the just and the unjust.' Crime must be proved, not presumed." *People v. White*, 24 Wend. 570, 574 (N.Y. 1840). For this reason, we have adopted rules prohibiting the introduction of character evidence because it incites the "deep tendency of human nature to punish" a defendant simply because he or she is a bad person, WIGMORE, *supra*, § 57, at 1185, a "criminal-type" deserving of conviction. *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007).

These ideals have been enshrined in our jurisprudence for centuries. *See generally McKinney v. Rees*, 993 F.2d 1378, 1381 & n.2 (9th Cir. 1993) (explaining the rule precluding prior bad act evidence has "persisted since at least 1684 to the present"). I invoke these ideals because this case presents an opportunity to correct a wrong that wounds the very heart of our criminal justice system: the conviction of an individual, in part, for appearing to be a bad person. Unfortunately, that is what has happened here.

Fabian Arredondo, though entitled to these protections before the law, was denied them here. On the night of December 5, 2009, three Sureño gang members were injured in a drive-by shooting. One young man died. Arredondo, a known

2

member of the rival Norteño gang, was charged with and convicted of first degree murder and assault in relation to this incident. The trial court allowed, over defense objection, evidence of an unrelated and uncharged February 2009 drive-by shooting as evidence of Arredondo's "animosity towards people . . . of the Sureno persuasion." 1 Verbatim Report of Proceedings (VRP) (Oct. 10, 2011) at 26-27. According to the trial court, this animosity illustrated identity, motive, and intent. The majority accepts the trial court's reasoning even though the facts are insufficient to support these conclusions. Because I disagree with the majority that the evidence of a prior drive-by shooting in which Arredondo was a suspect falls within the exception to ER 404(b), I respectfully dissent.

In the law of evidence, as in the search for justice, truth matters. 1 KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 184, at 993 (7th ed. 2013). The purpose of our evidentiary rules is to ensure fairness and unearth truth. Under ER 404(b), evidence of a defendant's prior bad acts is presumptively inadmissible. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). ER 404(b) explains that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

3

This rule forbids the State from suggesting that a defendant is guilty merely because he or she appears to be a criminal who would likely commit the charged crime. *Everbodytalksabout*, 145 Wn.2d at 466; *Mee*, 168 Wn. App. at 154. Guilt by appearance "contradicts 'the fundamental American criminal law belief in innocence until proven guilty, a concept that confines the fact-finder to the merits of the current case in judging a person's guilt or innocence.'" *State v. Embry*, 171 Wn. App. 714, 771, 287 P.3d 648 (2012) (Armstrong, J. Pro Tem., dissenting) (quoting *State v. Wade*, 98 Wn. App. 328, 336, 989 P.2d 576 (1999)); *see also State v. DeLeon*, 185 Wn.2d 478, 489, 374 P.3d 95 (2016) (possessing music from a prominent Latin American band is not evidence of gang membership).

To determine admissibility of evidence under ER 404(b), the trial court must conduct a four-part analysis. The court must (1) find by a preponderance of the evidence that the uncharged act probably occurred, (2) identify the purpose for which the evidence is admitted, (3) find it relevant to that purpose, and (4) balance the probative value against its prejudicial effect. *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002) (citing *State v. Lough*, 125 Wn.2d 847, 853, 889 P.2d 487 (1995)). Doubtful cases should be resolved in the defendant's favor. *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986) (quoting *State v. Bennett*, 36 Wn. App. 176, 180, 672 P.2d 772 (1983)). We review a trial court's ruling for abuse of discretion, which occurs when a decision is manifestly unreasonable or

4

*State v. Arredondo*, No. 92389-2 (González, J., dissenting)

based on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893
P.2d 615 (1995).

Here, the State failed to establish Arredondo's probable involvement in the
February 2009 drive-by shooting. Nothing in the record indicates that he was the
shooter, the driver, or even in the car at the time of the incident. I recognize that
keys to a vehicle similar to the one suspected in the February shooting were found
in Arredondo's pocket when police questioned him two weeks after the incident,
and a spent shell casing was discovered in the vehicle. This evidence establishes
that Arredondo had access to a vehicle that may have been involved in a crime two
weeks earlier. No evidence was presented that Arredondo had access to or even
constructive possession of the suspected car on the date of the shooting. *See State
v. George*, 146 Wn. App. 906, 919-20, 193 P.3d 693 (2008) (citing *State v.
Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969)) ("constructive possession"
defined).[1] The gun involved in the prior shooting was never located, and
Arredondo was never charged or convicted of any crime related to that shooting.
The meager evidence that Arredondo or another member of his alleged gang *could*

---

[1] The record indicates that Arredondo may have had control of the vehicle at some point during
February 2009. 4 VRP (Oct. 17, 2011) at 481. A community corrections officer testified that the
silver Mercedes had been "previously searched," and the officer asserted, without explanation,
that the search established Arredondo's "control" of the vehicle. *Id.* at 480-81. The officer did
not identify the date when this search occurred, nor did he provide additional details of the
search.

5

have been an accessory or principal in the drive-by shooting does not demonstrate that Arredondo *probably* was. Such evidence falls far short of meeting the preponderance standard to justify admissibility. Therefore, the February shooting should have been excluded on this basis alone.

Even if we assume there was sufficient evidence to prove Arredondo's involvement in the earlier shooting, the February shooting does not show identity, intent, or motive sufficient to fall within the permissible exceptions of ER 404(b). I agree with the majority that the earlier shooting was not sufficiently distinctive to prove identity because it does not establish a unique modus operandi. An earlier Norteño versus Sureño drive-by shooting alone does not have any distinctive characteristics to mark a later Norteño versus Sureño shooting as handiwork of the accused; it is not "so 'unusual and distinctive as to be like a signature.'" *Foxhoven*, 161 Wn.2d at 176-77 (internal quotation marks omitted) (quoting *State v. Coe*, 101 Wn.2d, 777, 684 P.2d 668 (1984)). Sadly, it may not have been unusual at all. *See, e.g.*, *State v. Weatherwax*, 193 Wn. App. 667, 671-73, 376 P.3d 1150, *rev'd*, 2017 WL 1292624; *State v. Moreno*, 173 Wn. App. 479, 489-90, 294 P.3d 812 (2013); *State v. Rodriguez*, 163 Wn. App. 215, 221-22, 259 P.3d 1145 (2011). In addition, different gang members were involved and different vehicles were used. *Compare* 4 VRP (Oct. 17, 2011) at 467-68 (noting a Mercedes-like vehicle suspected in the February shooting in a Sureño gang area), *with id.* at 469-

6

70 (discussing a Honda Accord suspected in the December shooting). That the prior drive-by act occurred in the same general location as the charged crime does not come close to establishing identity.

The inference of intent is similarly unavailing. To offer evidence of a prior act to reveal intent, there must be a logical theory other than propensity that demonstrates how the prior act connects to the intent required to commit the charged offense. Wigmore explains this inference as a three-step process because "'an act is not evidential of another act;'" an intermediate step is required. *Wade*, 98 Wn. App. at 335 (quoting WIGMORE, *supra*, § 192, at 1857). It cannot be argued that because a defendant did an act last year—or in this case, 10 months prior—he probably did the act now charged. *Id*.

Using a prior drive-by shooting in which Arredondo's involvement was not proved to illustrate current criminal intent invites the inference that because Arredondo had the intent to kill or inflict great bodily harm against certain gang members previously, he must possess the same intent against different gang members now. As I emphasized regarding identity, the facts of the December shooting differ from the February shooting. Different gang members were involved, and different vehicles were used. The fact that both shootings occurred in the same general location does not support an inference of intent.

Similarly, animosity among gangs is, by itself, insufficient to show motive. "Motive" is a "'[c]ause or reason that moves the will[;] . . . [a]n inducement, or that which leads or temps the mind to indulge in a criminal act.'" *State v. Tharp*, 96 Wn.2d 591, 597, 637 P.2d 961 (1981) (quoting BLACK'S LAW DICTIONARY 1164 (4th ed. rev. 1968)). Motive is distinguishable from "intent," which is the purpose or design with which the act is done. *Powell*, 126 Wn.2d at 260 (quoting BLACK'S LAW DICTIONARY 1014 (6th ed. 1990)). Evidence of past quarrels and ill feelings between individuals can show motive, but it is the facts of that relationship and not the propensity of the actor that generate the permissible inference under ER 404(b). *Id.*

Here, the existence of an earlier shooting where Norteño members harmed Sureño members fails to show motive for a later shooting by Norteño members against Sureño members. The prior shooting establishes only that certain Norteños had reasons to harm certain Sureños in February and that those Sureños may have reason to harm those Norteños after that altercation. The February shooting may establish motive for a retaliatory response by Sureño gang members, but not the other way around. While animosity or hostility may be "paradigmatic motive for committing a crime," *United States v. Russell*, 971 F.2d 1098, 1106-07 (4th Cir. 1992), the fact of a prior shooting against one individual does not evince specific animosity to commit a subsequent crime against a different individual. *See State v.*

*Stenson*, 132 Wn.2d 668, 702-03, 940 P.2d 1239 (1997) (evidence of prior hostile

actions between defendant and victim indicate motive for later crime involving the

same parties). Something more is required to show motive. *See, e.g., Embry*, 171

Wn. App. at 733-34 (lingering animosity for a rival gang member about an earlier

fight); *State v. Mancilla*, 197 Wn. App. 631, 644, 391 P.3d 507 (2017) (gang

members' reasons to target a rival gang member's house); *see also State v. Gates*,

28 Wash. 689, 698, 69 P. 358 (1902) (prior threats); *State v. Campbell*, 78 Wn.

App. 813, 822, 901 P.2d 1050 (1995) (status challenges and invasions into

defendant's drug sales territory by rival drug dealer); *Powell*, 126 Wn.2d at 260

(past fights, physical altercations, financial gain); *State v. Boot*, 89 Wn. App. 780,

789, 950 P.2d 964 (1998) (prior threat by gunpoint).[2]

---

[2] According to the majority, targeting different individuals in different drive-by shootings "is of no matter" because here the victims of both events were Sureño gang members. Majority at 15. In support, the majority cites *State v. Peerson*, 62 Wn. App. 755, 816 P.2d 43 (1991), *United States v. Franklin*, 704 F.2d 1183 (10th Cir. 1983), and *State v. Davis*, 6 Idaho 159, 53 P. 678 (1898). In so doing, the majority ignores critical and distinguishing factual differences between these authorities and the instant case. In *Peerson*, the defendant assaulted and killed four marijuana growers. 62 Wn. App. at 758-59. The trial court admitted evidence of the defendant's earlier assault on other growers, with one victim in common between the two events. *Id.* at 775-78. Notably, the prior assault occurred in response to the marijuana growers' actions against the defendant—they refused to sell marijuana to him. *Id.* at 759. The later assault was retribution and retaliation for cutting off the defendant's drug supply. *Id.* at 776. The *Franklin* case is inapposite. In *Franklin*, the court found evidence of a defendant's previous attack on an interracial couple admissible under the Federal Rule of Evidence 404(b) because the attack showed motive and intent for a later murder of two African American men. 704 F.2d at 1187-88. This case is profoundly disturbing and profoundly irrelevant to the analysis at hand. The *Franklin* defendant committed multiple racially motivated crimes against multiple individuals. *Id.* Here, it is far from established that the same individual committed a gang-related crime in the first instance. The *Davis* opinion is similarly inapposite. In that case, the court found evidence of a defendant's past threats and attacks against sheepherders "clearly admissible" to

9

Thus, the implication that a prior shooting can demonstrate motive for a later shooting is premised on the assumption that because Arredondo was probably involved in the same type of crime (a drive-by shooting) in February, he was predisposed to have the same intent and motive to commit a drive-by shooting in December. Animosity was little more than a euphemism for propensity. And propensity is not a permissible ground to admit prior bad act evidence.

More significantly, any probative value the prior shooting had to prove motive or intent was substantially outweighed by its prejudicial effect. Gang rivalry, to the extent it was relevant, could have been demonstrated in less prejudicial ways. Indeed, it was conceded at trial. Evidence of a prior gang-on-gang shooting is extremely prejudicial in a case involving a gang-on-gang shooting because it invited the jury to make the "forbidden inference" underlying ER 404(b). It allowed jurors to surmise that Arredondo had a propensity to commit drive-by shootings regardless of the paucity of evidence tying him to that earlier shooting or the strength of the State's evidence tying him to the later shooting. In other words—once a criminal, always a criminal.

---

show motive for the later murders of other sheepherders. 6 Idaho at 172. But the court in *Davis* provides no analysis or authority for why this evidence is "clearly admissible." *Id.* at 682. One court characterized *Davis* as holding that hostile threats against a class of persons manifest a hostile state of mind against each person of that class and are admissible for that purpose. *See State v. Hanlon*, 38 Mont. 557, 557-78, 100 P.1035 (1909). Such an interpretation would mean that the Norteño animosity for Sureños could be reasonably used not only against Arredondo but against *any* Norteño suspected in the December or February 2009 shooting.

10

The reluctance of witnesses to testify at trial does not lower the standard of proof necessary to satisfy ER 404(b). A trial court must still weigh the probative value of prior acts evidence against its prejudicial effect, regardless of the "code of silence" between gang members, witnesses, or victims. *See Old Chief v. United States*, 519 U.S. 172, 174, 179-80, 190, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) (a defendant's prior assault conviction was unnecessary to prove later firearm possession and assault charges, and the prior crime was found to be highly prejudicial, as it was similar to the defendant's pending assault charge). Any probative value the prior shooting had to show intent or motive through animus between the rival gangs was satisfied by the defense's concession that the gangs were rivals and that Arredondo was a member of that rival gang. In contrast, the likelihood the jury would consider the evidence for the impermissible purpose of criminal propensity was significantly high. *See State v. Saltarelli*, 98 Wn.2d 358, 365-66, 655 P.2d 697 (1982) (earlier attempted rape extremely prejudicial); *Mee*, 168 Wn. App. at 159 (gang evidence unfairly prejudicial); *State v. Asaeli*, 150 Wn. App. 543, 579, 208 P.3d 1136 (2009) (noting "the inflammatory nature of gang evidence generally"). In light of this concession, the balance struck by ER 404(b) weighs heavily in favor of the defendant, and the trial court abused its discretion in admitting it. *Smith*, 106 Wn.2d at 775 (relevant evidence must be excluded if probative value substantially outweighed by unfair prejudice).

Further, the erroneous limiting instruction that allowed the jury to consider the February shooting for proper (intent and motive) and improper (identity) purposes was insufficient to overcome the prejudicial nature of the evidence. It is debatable whether a limiting instruction would ever be sufficient to undermine the deep tendency of human nature to punish a defendant simply because he or she is a bad person. *See State v. Miles*, 73 Wn.2d 67, 71, 436 P.2d 198 (1968) (limiting instruction could not erase inherently prejudicial evidence); *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S. Ct. 716, 93 L. Ed. 790 (1949) (Jackson, J., concurring) ("The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction."). In this case, Arredondo's rights, though "'declared in words'" were "'lost in reality.'" *See Olmstead v. United States*, 277 U.S. 438, 473, 48 S. Ct. 564, 72 L. Ed. 944 (1928) (Brandeis, J., dissenting) (quoting *Weems v. United States*, 217 U.S. 349, 373, 30 S. Ct. 544, 54 L. Ed. 793 (1910)).

Arredondo's conviction was unjustly obtained. He was convicted not simply because the State had evidence beyond a reasonable doubt that he committed the December 2009 drive-by shooting, but, in part, because the jury was told he was a violent gang member who went unpunished for a similar crime in the past. *State v. Kilgore*, 147 Wn.2d 288, 296, 53 P.3d 974 (2002) (Chambers, J. concurring) ("A fair trial is denied when the jury is permitted to conclude the

12

accused deserves punishment because of other bad acts.") Though this may be a textbook case of gang violence, it is also a textbook case of improper propensity evidence used to distract the jury from the State's tenuous case against Fabian Arredondo. *See, e.g.*, *People v. Golochowicz*, 413 Mich. 298, 324-27, 319 N.W.2d 518 (1982) (a defendant's unrelated, similar crime may distract the jury from weak evidence and tempt it to ignore other elements).

The trial court abused its discretion in failing to reasonably apply ER 404(b) and improperly admitting the February 2009 evidence for untenable reasons. The evidence against Arredondo was not overwhelming. The erroneous admission of the prior shooting evidence was not harmless. *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980) (applying harmless error standard to erroneous admission of evidence). I would reverse and remand for a new trial. In affirming Arredondo's conviction as the majority does, a conviction brought about by improper evidence, we are violating the principle that the prosecution may land "hard blows," but it may not land "low ones." *Caro v. Smith*, 59 Cal. App. 4th 725, 739, 69 Cal. Rptr. 2d 306 (1997).

I respectfully dissent.

13

González, J.

Johnson

McCloud, J.

Stephens, C.J.